MAYS v. SEABOARD AIR LINE RY.

1. Constitution—Railroad.—The Act of 1905, 24 Stat., 956, providing that railroad companies shall build industrial side-tracks to connect industrial enterprises with their main lines so as to deliver and receive freight therefrom in car loads, costs to be paid by interprise in first instance and then repaid by companies in annual instalments of twenty per cent. of the freights collected, is violative of the 14th amendment to the U. S. Constitution and of secs. 15 and 17, of art. I., of Constitution of this State, as authorizing the taking of private property for private use.

2. Appeal.—Constitutional question not made on Circuit will not be considered on appeal.

3. Corporations—Constitution—Words and Phrases.—A Railroad Company is a *quasi* public corporation, but its property is *private property* in sense in which those words are used in State and Federal Constitutions.

Before Memminger, J., Greenwood, October, 1905. Affirmed.

Action by W. H. Mays against Seaboard Air Line Ry. From judgment sustaining demurrer to complaint, plaintiff appeals.

*Messrs. Sheppards, Grier & Park,* for appellants. *Mr. Grier* cites: *The act is a valid exercise of the reserved power in the Legislature to alter, amend or repeal the charter of all corporations:* Cool. Con. Lim., 87; 19 Wall, 673; 42 S. C., 298; 11 Stat., 183; Con. 1868, art. V., sec. 12; Con. 1895,

art IX., sec. 2; Code 1902, 1842; Acts 1902, 1311; 17 Wall., 322; 82 U. S., 205; 99 U. S., 348; 24 S. C., 61; 57 A. & E. R. R. Cas., 556; 68 N. Y., 326; 2 Wood on R. R., 828; 38 S. C., 105; 26 A. & E., R. R. Cas., 368; 48 L. ed., U. S., 971; 48 L. ed. U. S., 615; 21 L ed. U. S., 98; 17 L. ed. U. S., 163; 20 L. ed. U. S., 55; 27 L. ed. U. S., 412; 28 L. ed. U. S., 173. *The amendment of the charter is reasonable:* 48 L. ed. U. S., 615. *The act is a valid exercise of the police power:* 7 Cush., 53; 38 S. C., 493; 99 U. S., 642; 28 L. ed. U. S., 923; 38 L. ed. U. S., 385; 123 U. S., 623; 42 S. C., 222; 94 U. S., 113; 169 U. S., 466; 53 S. C., 279; 29 L. ed. U. S., 517; 49 L. ed. U. S., 831; 164 U. S., 578; 143 U. S., 517; 153 U. S., 371; 173 U. S., 285; 169 U. S., 366.

*Messrs. J. L. Glenn* and *Wm. P. Greene,* contra. *Mr. Glenn* cites: *This act authorizes taking of private property:* 165 U. S., 150; 43 N. Y., 137; 10 R. R. R., 137; 49 S. E., 736; Cool. Con. Lim., 442, 443; 53 S. C., 118; 14 S. C., 424; 66 S. C., 433; 62 S. C., 516; 74 N. Y., 183. *The statute cannot be sustained as a police regulation:* Cool. Con. Lim., 719; 2 Elliott on R. R., 950, 959; 16 Wall., 36; 98 N. Y., 98; 35 A. & E. R. R. Cas., 286, 292.

*Mr. Green* cites: *What is a taking within meaning of constitutional provisions:* 10 Ency., 1088, 1103, 1109; 14 Grey, 161; 66 S. C., 870; 50 Am. R., 639; 20 Am. St. R., 133. *The taking for a private purpose and act unconstitutional:* 10 Ency., 1078; 24 A. & E. R. R. Cas., 262. *Pittsburg* v. *Benwood Iron Works,* 8 S. E.; 2 L. R. A., 680; 69 L. R. A., 869; 35 A. & E. R. R. Cas., 292, 289; 60 L. R. A., 529. *Railroads are persons and their property is private property:* 69 L. R. A., 875; 8 S. E., 466; 31 U. S., 494; 41 U. S., 495; 62 S. C., 52. *If the taking be for public purpose it is unconstitutional, as no compensation is provided:* 10 Ency., 1171, 1132; 27 Wis., 445; 60 Me., 290; 100 Ill., 21. *Right of amending charters:* 7 Ency., 675; *R. R.* v. *Gibson,* 21 Am. St. R.; 99 U. S., 700; Cool. Con. Lim.,

394, note 1; 43 U. S., 704, 864. *Constitutional question not raised below will not be considered here:* 69 S. C., 460; 70 S. C., 56; 50 S. C., 259. *Police power defined:* 7 U. S., 553; 38 L. R. A., 674; 38 Am. R., 597.

November 29, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. This action seeks to recover ten dollars each day from the 9th day of June, 1905, to the 12th day of July, 1905, one-half of which when adjudged shall be paid to the State of South Carolina and the other half thereof for the plaintiff and for such other relief as may be just. The complaint is as follows:

"1. That the defendant is now and was at the times hereinafter named a railroad corporation, created by and under the laws of the State of South Carolina, and as such owns and operates a line of railroad passing through the county and State aforesaid.

"2. That heretofore the General Assembly of the State of South Carolina, at the regular session of 1905, passed an act entitled *An act to require railroad companies to construct, maintain and operate industrial side-tracks,* approved the 4th day of March, A. D. 1905, which by the terms thereof went into effect upon its approval by the Governor, as will appear by reference to the said act, found in the acts of 1905, at page 956.

"3. That the said act above referred to, among other things, provides that whenever any manufacturing or industrial enterprise is proposed to be located or is already located along the line of any railroad company in this State, and within one-half mile thereof, the corporation or corporations owning or operating the said line of railroad be and they are hereby required to build, construct, operate and maintain such connecting track or tracks as may be necessary to effect an actual connection with the said manufacturing or industrial enterprise, and such said line of railway for the purpose of interchanging receiving, delivering and

handling for said enterprise cars and freight in car load lots, and such manufacturing or industrial enterprise shall file with the railroad company an application in writing, giving to the company thirty days notice of its demand for said track, together with the location of said enterprise; that the said act also provides that the costs and expenses paid and incurred in obtaining the rights of way shall be borne by the said enterprise, payable to the said railroad company upon the completion of the said track, which payment shall be guaranteed to the company by a good and efficient bond, entered into by said enterprise, with surety, to be approved by the clerk of Court of the county in which the said enterprise is located, and further provides that before the said enterprise shall be required to make payment for the construction of the track, the railroad company shall file with the enterprise a sworn itemized statement of the actual cost of obtaining right of way and cost of construction.

"4. That in and by section 3 of the said act, it is also provided, among other things, that upon receiving notice, as provided in said act, that the track is required or desired, the said railroad company shall forthwith proceed to have the proposed line surveyed and the cost of construction estimated, and furnish said enterprise with a detailed statement of the same within thirty days after having received notice, and thereupon said enterprise shall enter into a bond as required by section 1 of said act, and upon receipt of same the railroad company shall proceed within ten days thereafter to enter upon the construction of the said track, which shall be completed without delay.

"5. That by section 4 of the said act, a penalty of ten dollars per day is imposed upon any railroad company failing to comply with the requirements of the act, to be recovered in an action by any person, firm or corporation aggrieved of the county in which the said enterprise is proposed to be located, one-half for the benefit of the party

bringing action, and one-half for the benefit of the State of South Carolina.

"6. That by section 5 of the said act, it is provided, among other things, that if upon application to the Railroad Commissioners, they shall decide that the side-track shall not be placed, then the said railroad company shall not be required to build the same, all of which will more fully appear by reference to the said act, to which reference is craved, the said act being a public act. That the plaintiff herein, W. H. Mays, is a citizen of and resides in the county of Greenwood.

"8. And heretofore the plaintiff, W. H. Mays, desired to locate a manufacturing or industrial enterprise, to wit: A brick plant for the manufacture of brick, near the line of railroad of the defendant company, to wit: within three hundred feet of its main line in the county of Greenwood and State of South Carolina, which said line of railroad is owned and operated by the defendant, Seaboard Air Line Railway.

"9. That on the 17th day of April, 1905, the said W. H. Mays gave thirty days' written notice of demand for a side-track to the defendant company and that he proposed to locate such said enterprise, together with the location thereof, and that he desired and required a side-track under the provisions of the act of the Legislature above referred to, and on the said day and date, to wit: April 17th, 1905, filed in writing with the said defendant company, the owner of the said railroad along the line of whose railroad the said enterprise was proposed to be located, notice of which the following is a copy:

" 'To the Seaboard Air Line Railway:

" 'You will please take notice, that the undersigned, W. H. Mays, proposes to locate a manufacturing and industrial enterprise, to wit: A brick plant for the manufacture and sale of brick, near the line of your railroad in the county of Greenwood and State of South Carolina, about three hundred (300) feet from your main line, beginning at a point on

your main line indicated by your slow post, which said slow post is about nine hundred (900) feet from your 113 mile post in the direction of Greenwood, a more detailed description of which will appear by reference to a plat of main line and side-track, attached hereto, made by W. H. Yeldell on March 24, 1905. I hereby file with you this my application in writing, giving you thirty days notice of my demand for said side-track, together with the location of the said enterprise, which is to be located as is indicated by said plat, attached hereto, designated brick-yard. I am ready to comply with the terms of the act of the Legislature of the State of South Carolina in this behalf, approved the 4th day of March, 1905, under and by virtue of the terms of which this application is made. .

" 'I am the owner of the land upon which the side-track and said enterprise are to be located and will give you the right of way.

" 'I hereby request your compliance with section 3, of the act above mentioned, whereupon I am ready to comply fully and enter into a bond required by section 1, of the said act, and make the payment required to be made by said section. I desire that this matter be taken up at once, to the end that there may be no delay, since it is my purpose, as soon as possible, to build and erect the said enterprise as indicated herein.'

"10. That thereafter, on the 26th day of May, 1905, the said defendant company furnished the plaintiff herein with a statement showing estimate of cost of side-track, of which the following is a copy:

" 'MATERIAL.

150 ft. 75 lb. rail, 1510-2240 tons, at
    $28.00 ......................$ 46 88
450 ft. 60 lb. rail, 440-2240 tons, at
    $24.00 ......................  96 43
875 lb. continuous joints, at $1.36.....  10 88

| | | |
|---|---|---|
| 15 prs. 60 lb. angle bars, 476.4 lbs., at $1.52 | 7 24 | |
| 1 No. 9 75 lb. lh. spring frog | 43 50 | |
| 1 15 ft. 75 lb. switch | 28 00 | |
| 1 high switch stand | 16 50 | |
| 2 kegs spikes, at $3.75 | 7 50 | |
| ½ keg bolts, at $4.92 | 2 46 | |
| 1 set No. 9 switch ties | 47 25 | |
| 110 pine cross-ties, at 29 cts | 31 90 | |
| 2 per cent. handling | 6 77 | $ 345 31 |

### LABOR.

| | | |
|---|---|---|
| 138 cu. yds. excavation, at 20 per cent. | 27 60 | |
| Laying and surfacing 225 ft., at 10 cents | 22 50 | |
| Putting in switch | 0 00 | |
| 10 per cent. supervision | 7 01 | |
| Engineering | 10 00 | 87 11 |
| | | $4,321 42 |

Sworn to and subscribed to before me, this 26th day of May, 1905. E. Bleckley.'

"11. That immediately on receipt of said statement the said W. H. Mays, on the 29th day of May, 1905, entered into a good and sufficient bond, with surety, which said bond was approved by the clerk of Court for the county of Greenwood, both as to form and sufficiency, and filed the same with the said defendant company on the said 29th day of May, 1905, which said bond the said defendant company still retains, which is not questioned in any way, either as to form or sufficiency, which said bond plaintiff alleges is in accordance with the terms and requirements of the act in this behalf. That plaintiff has fully complied with the terms and requirements of said act.

"12. That the said defendant company has failed to comply with the requirements of the act of the Legislature above

referred to and has failed and refused to proceed within ten days after the entering into the bond required by the said act, which was entered into as required and filed with the defendant company on the 29th day of May, 1905, to enter upon the construction of the said side-track, and has failed and refused to take any steps whatever looking to the construction of the said side-track, and has not applied to the Railroad Commissioners, as provided by sec. 5 of said act.

"13. That the said defendant company has stated to plaintiff through his attorney that it proposes to contest the validity of the said act of the Legislature and does not propose to construct the said side-track, but, on the contrary, will refuse' so to do.

"14. That under the terms of the said act the said defendant company is liable to a penalty of ten dollars per day for each day it fails to comply with the terms of the said act; that the said company should have entered upon the construction of the said side-track not later than the 9th day of June, 1905; that it was and is liable to a penalty of ten dollars a day on and after the said 9th day of June, 1905, until it complies with the terms of the act, which has been incurred by said defendant.

"15. That under and by virtue of the provisions and terms of the said act the said defendant company is now liable in the sum of $330.00 and an additional sum of ten dollars per day from this date; to wit: July 12th, 1905, until judgment is rendered in this action, and thereafter in ten dollars per day until it complies with the terms of the act, judgment being demanded in this suit only for the amount up to the rendition of the said judgment, the subsequent amount being left open for future determination.

"16. That one-half of the amount of the said penalty is for the benefit of this plaintiff and the other one-half thereof for the State of South Carolina; that this plaintiff has been injured and is aggrieved by the action of said corporation in failing to comply with the provisions of the act referred to; that each day the injury done to and inflicted upon this plain-

tiff by the said conduct of the defendant company, is greatly in excess of the penalty fixed by said act; that his actual damages caused thereby would exceed the amount of said penalty, all of which is done and caused by the failure of the said company to comply with the requirements of the act of the Legislature in this behalf. That this action is brought under the terms of such act.

"Wherefore, the plaintiff demands judgment against the said defendant company for the sum of ten dollars per day from the 9th day of June, 1905, one-half of which to be for the benefit of the State of South Carolina and one-half thereof for this plaintiff, and for relief as may be just."

The demurrer is as follows:

"That the defendant will demur to the complaint herein on the ground that the same fails to state facts sufficient to state a cause of action, the cause of action being founded upon the act of March 4th, 1905, entitled, "An act to require railroad companies to construct, maintain and operate industrial side-tracks," which act is unconstitutional, null and void, in that

"(a) It seeks to deprive railroad companies of their property without due process of law, contrary to the provisions of the fourteenth amendment to the Constitution of the United States, and contrary to the provisions of article I., section 5, of the Constitution of this State.

"(b) It seeks to take private property for private purposes without the consent of the owner, contrary to the provisions of article I., section 17, of the Constitution of this State.

"(c) It seeks to take private property for public purposes without first making compensation therefor, contrary to the provisions of article I., section 17, of the Constitution of this State."

The order of the presiding Judge sustaining the demurrer is as follows:

"The defendant in this case having served notice of demurrer to the complaint of the plaintiff, stating the grounds

thereof, after argument I am of the opinion that the demurrer should be sustained, it being my conclusion that the act of the Legislature upon which plaintiff's action is based is unconstitutional, null and void, for the reasons and on the grounds stated in the notice of demurrer.

"It is, therefore, ordered, that the demurrer to the complaint be sustained and that the complaint be dismissed with costs."

We regard it important to reproduce the act in its entirety, which is as follows, 24 St., 956:

"Section 1. Be it enacted by the General Assembly of the State of South Carolina, That whenever any manufacturing or industrial enterprise is proposed to be located or is already located along the line of any railroad company in this State, and within one-half mile thereof, the corporation or corporations owning or operating the said line of railroad be, and they hereby are, required to build, construct, operate and maintain such connecting tracks as may be necessary to effect an actual connection with the said manufacturing or industrial enterprise, and such said line of railway, for the purpose of interchanging, receiving, delivering and handling for said enterprise cars and freight in carload lots; and such manufacturing or industrial enterprise shall file with the railroad company an application in writing, giving to the company thirty days' notice of its demand for said track, together with the location of the said enterprise: *Provided,* That the cost of construction together with the costs and expenses paid and incurred in obtaining the rights of way shall be borne by the said enterprise, payable to the said railroad company upon the completion of the said track, which payment shall be guaranteed to the company by a good and sufficient bond, entered into by said enterprise, with surety, to be approved by the clerk of Court of the county in which the said enterprise is or is to be located: *And Provided, further,* That before any manufacturing or industrial enterprise shall be required to pay for the construction of any track the railroad company shall file with the said manufac-

turing or industrial enterprise a sworn itemized statement of the actual cost of obtaining the right of way, and costs of construction, which shall be paid by said manufacturing or industrial enterprise: *Provided, however,* That after the railroad company, with whose line of railroad a manufacturing or industrial enterprise desires to connect, has procured the right or rights of way for the enterprise desiring to connect therewith, and shall have furnished to such enterprise the detailed statement, of the cost of the construction of the proposed side-track, such enterprise shall have the option to build and construct the side-track by it desired, on its own account, and in such event the railroad company, with which said side-track is to connect, shall, in addition to procuring the right or rights of way for the said side-track or side-tracks, furnish and provide all necessary material in the manner herein required, for the construction of the said side-track, and the enterprise so constructing its side-track shall not be chargeable with the cost of construction by it done, and shall not to that extent be required to give bond: *Provided, further,* That before any railroad company shall be required to operate its cars over such track when so built, same shall have been first accepted by one or more of the Railroad Commissioners, and said Commissioners, one or more, are hereby required to inspect said side-track within ten days after written notice that the same has been completed.

"Sec. 2. That the said railroad company shall each year refund and pay to the said enterprise, twenty per cent. (20 per cent.) of the revenue derived by it from freight received from and delivered to the said enterprise, until the entire cost paid by it for the construction of the said track shall have been refunded and repaid.

"Sec. 3. Upon receiving notice as herein provided that such track is required or desired, the said railroad shall forthwith proceed to have the proposed line surveyed and the cost of construction estimated, and furnish said enterprise with a detailed statement of the same within thirty

30—75

(30) days after it has received said notice; and thereupon the said enterprise shall enter into the bond required by section 1, thereof, and upon receipt of the same, said railroad company shall proceed within ten (10) days thereafter to enter upon the construction of the said side-track, which shall be completed without delay.

"Sec. 4. Any railroad company failing to comply with the requirements of this act shall be subject to a penalty of $10.00 per day for each day it fails to so comply, to be recovered in an action by any person, firm or corporation aggrieved, of the county in which the said enterprise is proposed to be located; one-half for the benefit of the party bringing said action and one-half for the benefit of the State of South Carolina.

"Sec. 5. *Provided,* If on application in this behalf the Railroal Commissioners shall decide that said side-track shall not be placed, then the said railroad company shall not be required to build the same; *Provided, however,* That in such application to the said Railroad Commissioners, it shall be incumbent upon the railroad company resisting the construction of the proposed side-track to show that the necessity for the construction of said connecting track or side-track does not exist: *Provided, further,* That the Railroad Commissioners shall, and they are hereby, requirel to render their decision upon said application within thirty days from the date of said application.

"Sec. 6. This act shall go into effect immediately upon approval by the Governor.

"Approved the 4th day of March, A. D. 1905 "

We will examine the exceptions in their order.

"I. His Honor committed error in holding that the act of the Legislature was unconstitutional and void and undertook to deprive railroad companies of their property without due process of law, contrary to the provisions of the fourteenth amendment of the United States, and contrary to the provision of article I., of section 5, of the

Constitution of the State of South Carolina, the error being.

"a. The act of the Legislature mentioned in the said complaint is an amendment to the charter of the defendant company.

"b. The said act of the Legislature is a valid exercise of its police power, and his Honor should have so held.

"c. The said act of the Legislature is a valid exercise of the reserved power in the Legislature to alter, amend or appeal the charters of all corporations at any time, and his Honor should have so held.

"d. Under the general power to control railroads, the Legislature of South Carolina has the right to declare that they shall maintain and operate certain industrial side-tracks and the act in question is a valid exercise of this power of the Legislature."

It will be well at this point to reproduce the text of the 14th amendment to the United States Constitution, as well as that of the 5th and 17th sections of article I. of the State Constitution, because in this way we will have clearly before our minds the exact provisions of the Federal and State Constitutions on this subject:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law * * *" 14th amendment of U. S. Constitution.

5th section of article I., State Constitution, provides: "The privileges and immunities of citizens of the State and of the United States, shall not be abridged; nor shall any person be deprivel of life, liberty or property without due process of law; nor shall any person be denied the equal protection of the laws." While sec. 17, of art. I., of the State Constitution, provides: "Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

Thus, we see both by the Federal and State Constitutions that full protection is herein provided against any infraction of the rights of citizens. This should be so. Any disregard of these constitutional provisions aims a death blow at the preservation of private rights, and it falls to the lot of the courts to uphold and protect these provisions of law. A corporation in the eyes of the law is a private individual so far as property rights are concerned. In this instance, the defendant railroad has already had measured to it under the law its right to maintain its property rights in its tracks, in its engines and other property, and its franchises laid out and measured and admitted. By this act of the Legislature it is sought to confer upon a private individual the right, within the distance of one-half mile, to require this railway company to connect its railway track with a private brick mill against the railway company's consent. It is required by this act that the railroad shall lay out a track from its line of railway to the brick mill of the plaintiff. It is true, that the act provides that the plaintiff shall pay the cost of trackage, but this, every dollar of it, must be returned by the railroad to the owner of the brick mill in instalments of twenty per cent. each for five successive years, thus taking from the railroad's pocket money which it has already earned. If this is not an infraction of law, what is it? Thus it violates the requirements of our Federal and State Constitutions. While the Legislature is empowered to alter or amend the charter of the defenlant, it is imperative upon it to respect the property of defendant under the guarantees of the Constitution in so doing. Sub-division (a), therefore, must be overruled.

(b) In the case for appeal, it is set forth as follows: "During the opening arguments of defendant's counsel on the demurrer, counsel for appellant stated to the Court that he did not intend to argue that the act was a police regulation and would not contend in his argument in reply that it could be sustained as such, and the question, therefore, was not argued by either side before the

Judge." This is a fatal objection to the ground of appeal as set forth in this sub-division, for thus it appears that the Circuit Judge has never passed upon this question—indeed, was expressly denied the right to do so by the appellant himself. This sub-division is overruled.

(c) No such right is guaranteed by law to the plaintiff in regard to side-tracks contemplated by the plaintiff, and in as much as the act in question contravenes the constitutional rights of the defendant, we hold that the Legislature had no such power. This sub-division is dismissed.

"II. His Honor committed error in holding that the said act seeks to take private property for private purposes without the consent of the owner, contrary to the provisions of art. I., sec. 17, of the Constitution of this State, the error being,

"a. That the property of a railroad company is in no sense private property. It is impressed with a public use and the corporation itself is a *quasi* public corporation, created for governmental purposes only, over which the Legislature has at all itmes plenary power, and his Honor erred in so holding."

In the case of *Moore* v. *Railroad,* 38 S. C., 1, 24, 16 S. E., 781, this Court laid down as follows: "That railroads are *quasi* corporations, is admitted on all hands. They owe a duty to the public, and to a certain extent their control is under agencies devised by the public. A very good illustration of this fact may be found in our statutes in regulation of such corporations, yet the property of such corporations is private pr perty   ⅔ in order to enable these corporations to realize the means with which to answer this duty to the public and at the same time to earn some return for the capital invested in such enterprises, tariffs of rates both for the transportation of persons and property are allowed to be fixed by such railroads." Thus we see that the property of such railroads is private property in the control of which in a certain measure the public is interested, but the annihila-

tion or serious abridgement of such private property is not given to the Legislature. This exception is overruled.

"III. His Honor erred in holding that the said act seeks to take private property for private purposes without first making compensation therefor, contrary to provisions of art. I., sec. 17, of the Constitution of this State, the error being,

"a. That the question of eminent domain has no application whatever to the provisions of this act, and his Honor erred in so holding.

"b. The act does not undertake to take private property without compensation."

We think that under the act in question the private property of defendant corporation is taken for a private purpose, and is, therefore, unconstitutional. The act in question requires this defendant railway, at any place within one-half mile of its track, to lay out side-tracks; to do this it may be necessary to pass over with said side-tracks the lands of others. Of course, the railroad has no right to lay its track upon the lands of others without following the requirements of law. Under the doctrine of eminent domain it generally lays these side-tracks, but to do this it must obey the law as laid down in the statutes of this State. This may require the expenditure of sums of money, which sums are private property of the defendant corporation. Surely this is an admirable illustration of the dangers involved in the present act of the Legislature. This exception is overruled.

"IV. His Honor erred in holding that the act in question was unconstitutional, null and void, and dismissing the complaint herein because,

"a. The act of the Legislature, upon which this action is founded, entitled an act to require railroad companies to construct, maintain and operate industrial side-tracks, passed March 4th, 1905, is a valid exercise of the legislative power and control over railroad companies in this State: 1st. Under its police power. 2d. Under the reserved power in the

Legislature to alter, annul or repeal at any time the charters of any railroad company.

"b. Because, by section 5, of the said act, the Railroad Commissioners are given full power to decide whether the said side-track shall be placed or not, and the act merely enlarges the powers of the Railroad Commissioners to this extent.

"c. The act is legislative declaration that the construction and operation of the said industrial side-tracks is a public necessity, demanded by the public welfare of the State, and his Honor should have so held and sustained the constituitonality of the said act."

The points here involved have already been passed upon and need not be reconsidered. This exception and its subdivisions are overruled.

It is the judgment of this Court that the judgment of the Circuit Court appealed from, be affirmed.