### 7471

### CHARLESTON & WESTERN CAROLINA RY. v. DEVLIN.

1. EVIDENCE—FRAUD—PLEADING.—The objection to the evidence in this case tending to show the contract sued on was executed by one party by reason of the fraud and misrepresentation of the other on ground that such defense was not properly pleaded, is not well taken, because: (1) the Court in a law case may declare an instrument not mentioned in the pleadings void so far as the case being tried is concerned; (2) the evidence was admissible as elements of fraud; (3) the defect urged relates to the form of the pleading, and the remedy of appellant was motion to make more definite.

2. MASTER AND SERVANT—CARRIER.—THE CONTRACT here relating to the erection of a warehouse on the right of way of a carrier held to exempt the carrier from loss caused by the wantonness or recklessness of the carrier's servants, as that is a loss against which he can insure.

Before C. C. FEATHERSTONE, Special Judge, April term, 1909. Reversed.

Action by Charleston and Western Carolina Railway against R. H. Devlin. From judgment for defendant, plaintiff appeals.

*Messrs. S. H. McGee* and *S. J. Simpson,* for appellant.

*Messrs. Grier & Park,* contra.

March 5, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff through the

failure of the defendant to perform his part of the contract, entered into between said parties on the 20th of February, 1904, whereby the defendant was granted permission to erect on the plaintiff's right of way a house to be used for the storage of cotton seed, preparatory to shipment, in consideration of which he covenanted and agreed as follows:

First. "That the party of the first part will save and hold harmless the said company, its successors and assigns, from all damage, injury or liability that may arise from the destruction or injury of any building, improvements, or personal property of any description, by fire or from any other cause whatever, whether the same should be attributable to the negligence of the employees of said company or not, where such damage, injury or liability is caused, increased or in any manner contributed to by reason of the use of the premises hereunder; and the party of the first part agrees to insure, and keep insured, for benefit of party of second part, the said building and contents and all personal property on said lot.

Second. "The party of the first part will save and hold harmless the company, its successors and assigns, from all damage to any person that may partly or wholly arise from or be traceable to the occupancy of said premises by the party of the first part, or any other person, whether such damage be caused by the negligence of the company's employees, or from any other cause whatever."

The complaint alleges that the defendant erected and maintained the said warehouse, up to the 30th of October, 1906, when it and its contents, consisting, among other things, of cotton seed, belonging to J. O. and E. O. Devlin, were destroyed by fire; that J. O. and E. O. Devlin recovered judgment against the plaintiff for the loss of said cotton seed, which it was compelled to pay; that the defendant failed to insure the warehouse and to perform his part of the contract.

The defendant denied each and every allegation of the complaint, and set up the following defense:

"That, heretofore, on the 20th day of February, 1904, the defendant, at the request of the agent of plaintiff, authorized one of his sons to sign his name to the contract, which the agent of said plaintiff represented to him as a tenancy at will, the only purport and effect of which was that he, the said defendant, would be required under the terms of said contract to remove the buildings, which he had theretofore erected on the right of way of the plaintiff, if the plaintiff should require the same, at any time thereafter, for its own use.  The said defendant did not read the contract, and relied entirely upon the representation of the said agent. Defendant did not then know, and did not discover until after the fire, that the contract contained provisions whereby it was undertaken to make him liable for the negligence of the plaintiff.  That the said contract was obtained from the defendant by misrepresentation as to its purport and character, and the defendant has been overreached by the plaintiff."

He also sets up a defense that the fire originated not from the negligence of the railway company, but from its wilful, wanton and reckless misconduct.

The jury rendered a verdict in favor of the defendant, and the plaintiff appealed.

The first exception assigns error as follows: "Because the presiding Judge erred in allowing the defendant to introduce evidence tending to establish fraud and misrepresentation when a defense of this character is not properly pleaded in the answer."

When the plaintiff's attorney offered the contract in evidence the defendant's attorney said: "We waive formal proof of the contract, but, of course, subject to our defense. We simply waive formal proof of the document, subject to any other objection we have to it."

There are several reasons why this exception cannot be sustained:

In the first place, even in a *law* case, the Court has a right, when an instrument of writing is introduced in evidence,

although it was not mentioned in the pleadings, to declare it null and void, in so far as that action is concerned. *McKenzie* v. *Sifford,* 45 S. C., 496, 23 S. E., 622.

In the second place, the testimony was admissible for the reason that misrepresentation and deceit are elements of fraud. *Baldwin* v. *Cable Co.,* 78 S. C., 419, 59 S. E.. 67; *Brown* v. *Tel. Co.,* 82 S. C., 173.

Another reason is as follows: If the defect in a pleading relates merely to the form, the appropriate remedy is by motion to make definite and certain. The rule is thus stated in Pom. Code Rem., section 549: "The true doctrine to be gathered from all the cases is, that if the substantial facts which constitute a cause of action are stated in the complaint or petition, or can be inferred by reasonable intendment from the matters which are set forth, although the allegations of these facts are imperfect, incomplete and defective, such deficiency pertaining, however, to the form rather than the substance, the proper mode of correction is not by demurrer, nor by excluding evidence at the trial, but by motion before the trial to make the averments more definite and certain by amendment."

The defect in the defense set up by the defendant related to the form and not to the substance.

The next question that will be considered is whether the presiding Judge erred in his construction of the contract when he charged the jury that the plaintiff could not recover damages if it appeared from the testimony that the fire was caused by the reckless or wilful misconduct of its servants.

The respondent's attorneys, in their argument, say: "The contract itself does not, we think, undertake to cover the wanton, wilful and reckless misconduct of plaintiff or its agents. In the first clause the words, 'whether the same should be attributable to the negligence of the employees of said company or not,' and in the second clause the words, 'whether such damage be caused by the negligence of the company's employees, or from any other cause whatever,'

would, it seems to us, exclude any liability which might arise from the misconduct of the plaintiff, except negligence."

The agreement on the part of the defendant to save the plaintiff harmless is couched in most comprehensive terms, and the words just quoted were unnecessary to make the defendant liable for negligence, as the general language was sufficient for that purpose; but they were intended to emphasize the fact that negligence on the part of the plaintiff's employees was included in the language already used in defining the defendant's liability.

The relation which the plaintiff and its servants sustained towards each other is thus stated in *Mayer* v. *Thompson Hutchinson Building Co.*, 38 L. R. A. (Ala.), 433: "The liabilty of the master to third persons does not depend upon any privity between him and such third persons. It is the privity between the master and servant that creates the liability of the master for injuries sustained by third persons on account of misfeasance or non-feasance of the servant or agent."

In a note to this case, after mentioning the confusion that has arisen from the failure to observe the dual relation which the servant occupies, it is said that it is "because they (text-book writers) do not distinguish between the direct liability of an agent or servant to third persons for breach of his own duty toward them and an indirect liability to them for breach of duty to his employer, and fail to recognize or indicate the fact that an agent or servant may owe duties to third persons at the same time he owes service to his employer."

This language is quoted with approval in the cases of *Ellis* v. *Ry.*, 72 S. C., 465, 52 S. E., 228, 2 L. R. A. (N. S.), 79 n., and *Carter & Harris* v. *Ry.*, 84 S. C., 546.

In the case of *Street* v. *Ins. Co.*, 12 Rich., 13, it was held that insurers are liable for damage to an insured vessel caused by a collision at sea, that being a peril against which they insured, although the collision was the result of negligence on the part of the master and crew of the vessel

insured, even though such negligence was not a peril included in the policy.

In that case the Court said: "Cases, both in England and the United States, have firmly established the doctrine that if the vessel is seaworthy, and the master and crew competent, no negligence of the master and crew, not barratrous, which leads to a peril within the policy, constitutes a defense for the insurance against their responsibility for the damage done by that peril. * * * They (the insurers) have not insured against negligence, and, therefore, for damage of which negligence is the immediate cause they will not be answerable; but when a peril of the sea has been an immediate cause, and could have been operative, whether there had or had not been negligence, the law does not create an exception which is not in the words of the policy, and all inquiry beyond the peril is superfluous. * * * In the case before us the insurers were properly held answerable for the hurt received by the St. Andrew, for that came from collision, and to recover for it nothing but collision need have been averred." Thus showing that if the vessel was injured in consequence of a collision (which was a peril against which it was insured), the insurance company was liable, even though the collision was brought about by negligence on the part of the insured, as it made no difference from what cause the collision occurred. Applying these principles to the present case, it was immaterial from what causes the fire originated, provided it was not the result of reckless or wilful misconduct on the part of the plaintiff, as it would be against public policy for him to recover if the injury was caused by his own recklessness or wilfulness. But this exemption from liability does not extend to acts of wantonness or recklessness on the part of the plaintiff's servants, as they owed him a duty, against the breach of which he had the right to insure, and in such cases the doctrine, *"Qui facit per alium, facit per se,"* has no application.

These views practically dispose of all the exceptions.

It is the judgment of this Court that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.

MR. CHIEF JUSTICE JONES *did not sit in this case.*