Jerrald A. WATSON and United States Fidelity & Guaranty Company, Plaintiffs,

v.

SOUTHERN RAILWAY COMPANY, Defendant.

Civ. A. No. 75–362.

United States District Court, D. South Carolina, Greenwood Division.

Nov. 19, 1975.

Billy C. Coleman, Saluda, S. C., William T. Jones, Greenwood, S. C., Ronald L. Motley, Barnwell, S. C., Robert F. Fuller, Columbia, S. C., and J. Kendall Few, Anderson, S. C., for Jerrald A. Watson.

Heyward E. McDonald, Columbia, S. C., for U. S. Fidelity and Guaranty Co.

Robert J. Thomas, Columbia, S. C., for Southern Ry. Co.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

In this diversity action, originally filed in the Court of Common Pleas for Saluda County, South Carolina, and removed to this court by petition and bond for removal, filed in this court March 3, 1975, defendant Southern Railway Company seeks a summary judgment in its favor under the provisions of Rule 56(a),[1] Federal Rules of Civil Procedure. Plaintiffs resist. The court examines in the light of the pleadings, the discovery displayed in the record before it, and the excellent memoranda prepared by counsel for the various parties.

The original action arises out of the collision, which admittedly occurred on June 13, 1974, in Saluda County, South Carolina, by and between a train or parts of a train of the defendant and a peach shed of the plaintiff, who was in the peach growing and processing business at or near Monetta, in the County of Saluda, in the State of South Carolina. The point of the collision was admittedly on the right-of-way of the defendant. Admittedly, also, on December 1, 1944, defendant and Mrs. Mary F. Watson, from whom the plaintiff assumed[2] entered into a written agreement by the terms of which Southern granted to Mrs. Watson the right or license to occupy and use a strip of land on Southern's Augusta to Columbia mainline right-of-way having an area of 13,448 square feet, and also the right to maintain packing house, shed and platform, and the right to construct and maintain an additional packing house, or a portion thereof, next to a spur track with only a few feet of clearance. The collision caused considerable damage to the packing house, and it is for this damage that plaintiffs are suing.[3] Copies of the agreement between the late Mrs. Watson and defendant are part of the record, and admitted as true, as are copies of an attached drawing and plat to show the position of the properties of the parties. The location of the packing house,

1. Fed.R.Civ.P. 56(a) provides: Summary Judgment

*For Claimant.* A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

2. Defendant's request for admissions, No. 3 of August 29, 1975, posed:

The Plaintiff, Jerrald A. Watson, assumed from Mrs. Mary F. Watson the terms of the lease agreement described in paragraph two above and was in possession of said property pursuant to said lease on June 13, 1974.

On October 24th, plaintiff filed its response that: "(3) Request for Admission number 3 is admitted."

3. On May 6, 1975, this court granted defendant's previous filed motion of March 10, 1975, under Rule 17(a), Federal Rules of Civil Procedure, and required that the complaint be amended to show the interest of the United States Fidelity & Guaranty Co., and subrogated the parts, of the rights, if any of plaintiff, because of certain insurance payments, the Insurance Company had previously served notice of its subrogated rights on defendant. It is obvious that the insurance company can have no greater, nor lesser rights than the plaintiff, as the Insurance Company's rights are dependent upon the rights of the plaintiff, herein and no issue is made about this. In fact, on July 30, 1975, plaintiffs jointly filed an amended complaint in which both joined in asking judgment, and praying judgment against the defendant because of alleged losses from the collision.

shed and platform, and particularly their proximity to the track, were a material consideration in this case.

In paragraph 4 of its original answer, and in paragraph 4 of its first defense of its amended answer, and also paragraph 5 of its amended answer (part of its second defense), defendant has pleaded the provisions of the license agreement between Watson and Southern, particularly paragraph 8 of said agreement which provides:

> 8. That inasmuch as the use by the Licensee of property of the Railway Company in exercise of privileges herein granted may create risks of fire or other loss, injury or damage which would not accrue except for such use, and the Railway Company would not grant said privileges except upon the condition that it shall be protected against any risk so created, the Licensee, in consideration of said privileges, covenants hereby to protect and indemnify the Railway Company and save it wholly harmless from the consequences of any property loss or damage, death or personal injury whatever, accruing or suffered or sustained from or by reason of any act, negligence or default of the Licensee, her servants, agents or employees, in or about or in connection with the exercise of the privileges hereby granted, or which may in any manner or to any extent be attributable thereto, or to the presence of the structures of the Licensee, or contents thereof, or any other property of the Licensee on said premises of the Railway Company, and whether or not negligence on the part of the Railway Company, its servants, or employees, may have contributed to the loss, injury or damage, except that the Licensee shall not be held responsible for any loss of life or personal injury, or damage to cars or property of the Railway Company, accruing from its own negligence, without fault of the Licensee, her agents, servants or employees.

The crucial issue in this decision is whether the foregoing provision obligates Watson, the licensee, to indemnify Southern from the consequences of the property loss and damage of the plaintiffs which occurred when the train collided with the packing house.

## SUMMARY JUDGMENT MOTION

This court is ever mindful of its limited authority and scope in the consideration of a summary judgment motion.

█ In *Meltzer v. Atlantic Research Corp.,* 330 F.2d 946 (4th Cir. 1964) the opinion, as interpreted, has been headnoted to hold that on a motion to dismiss or summary judgment the allegations of the plaintiff are to be treated as admitted or as not genuinely in issue. The court is mindful of the fact, however, that it is not the office of Rule 56 to preserve purely speculative issues of fact for trial, *Atlantic States Construction Co. v. Robert E. Lee & Company, Inc.,* 406 F.2d 827 (4th Cir. 1969) and summary judgment should not be denied merely because the pleadings create the appearance of a dispute. *Bobo v. Page Engineering Co.,* 285 F.Supp. 664 (W.D.Pa.1967), *affirmed* 395 F.2d 991 (3rd Cir. 1968), cited in *Hicks v. Unger Motor Co.,* 332 F.Supp. 118 (E.D.Pa.1971). Hopefully, this court can use the procedures involved in the decision for summary judgment in an effort to improve the machinery of justice. As Judge Winter pointed out in *Bland v. Norfolk & Southern Ry. Co.,* 406 F.2d 863, 866 (4th Cir. 1969):

> [T]he function of a motion for summary judgment is to smoke out if there is any case, i. e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

As viewed by this court after a consideration of the entire file, the determination of this issue presently before the court, the integrity of the contract admittedly in force at the time of the collision, may be dispositive of the case. If the contract has no integrity, then the case can proceed to trial; if the contract has the integrity which the defendant insists, plaintiff has no case.

■ Since its impact is rather drastic, a summary judgment must be used with due regard for its purposes and should be cautiously invoked so that no person will· be improperly deprived of a trial of the disputed factual issues.[4]

### CONCLUSIONS OF LAW

■ A marked similarity exists between the language of the contract interpreted in *Southern Railway v. Coca Cola Bottling Co.*, 145 F.2d 304 (4th Cir. 1944)· and the language employed in paragraph 8 of the contract before this court. In fact both paragraphs were numbered 8. In the *Coca Cola* case the contract contained additional language upon which Judge Dobie based his opinion of liability. It is fairly obvious, that in the preparation of the contract here, counsel for the railroad were relying upon the ruling of the Fourth Circuit in *Coca Cola* and consequently omitted the language upon which liability was predicated in that case. Thus, the language here is so broad as:

> [T]o protect and indemnify the Railway Company and save it *wholly* harmless from . . . any property loss or damage . . . accruing . . . by reason of any *act.*

It appears from this language that the railroad is wholly indemnified by the contract.

The *Coca Cola* case involved a personal injury to a railroad employee whose body struck a building of the Coca Cola Bottling Company. Since a *personal injury* was involved, the excepting clause of provision (the last clause quoted from the contract in the opinion) was brought into play. The clause provided:

> * * * [E]xcept that the Licensee shall not be held responsible for *any loss of life or personal injury,* or damage to cars or property of the Railway Company, accruing from its own negligence, without fault of the Licensee, its servants or employees. (Emphasis added.)

Because of the excepting clause just quoted, the *Coca Cola court* held that if the railroad were negligent, and the bottling company were not negligent, the railroad could not invoke the indemnity provision and that negligence on the part of the bottling company could not be predicated on the location of the building at the precise place provided for in the contract.

Under the terms of the agreement before the court here, the negligence is irrelevant. Since the loss for which recovery is sought did not arise from loss of life, personal injury or damage to railroad cars or property, the indemnity provision expressly provides that the railroad is to be indemnified whether or not there was negligence on its part. The liability of the licensee to indemnify the railroad is in no way dependent on negligence on the part of the licensee. It is only dependent upon the presence of the licensee's building. The operative words of the provision are as follows:

> * * * [Watson] covenants hereby to protect and indemnify [Southern Railway Company] and save it wholly harmless from the consequences of any property loss or damage * * * which may in any manner or to any extent be attributable * * * to the presence of the structures of [Watson] upon said premises of [Southern Railway Company], and whether or not negligence on the part of [Southern Railway Company], its servants, or employees, may have contributed to such loss, injury, or damage * *.

In *Bohannon v. Southern Ry. Co.,* 97 Ga. App. 849, 104 S.E.2d 603 (1958), the court stated that "a loss *of* a building by fire due to outside causes, is not a loss *attributable to, due to,* or *occasioned* by the building itself." (Emphasis by the court itself.) But the court omitted three words contained in the agreement: "the presence of * * *." The agreement did not speak of losses caused by the building. It spoke of proper-

---

4. Wright & Miller, Federal Practice and Procedure, Volume 10, Section 2712 (p. 387), West Publishing Co., 1973 ed.

ty loss or damage "which may in any manner or to any extent be attributable * * to *the presence of* said building * * *." (Emphasis added.)

The words, "the presence of," were used in connection with certain warehouses erected on property of the railroad under lease in the case of *Batesburg Cotton Oil Co. v. Southern Ry. Co.,* 103 S.C. 494, 88 S.E. 360 (1916). The indemnity clause in that case was held to apply so that the railroad was not liable for the loss of the warehouses by fire. The indemnity clause provided that the licensee would indemnify the railroad against all loss, etc.:

* * * caused by fire, or otherwise, howsoever resulting, either to person or estate, and arising by reason of *the presence* of said warehouses upon the right of the railway company. (Emphasis added.) 103 S.C. at p. 498, 88 S.E. p. 362.

Also, in another fire case, *Charleston & W. C. Ry. Co. v. Devlin,* 85 S.C. 128, 67 S.E. 149 (1910), effect was given to a provision obligating the licensee to indemnify the railroad from all damage to any person that may partly or wholly arise from or be traceable "to the occupancy of said premises" by the licensee, regardless of whether the railroad may have been negligent.

In neither of the two cases cited above was the fire *caused by* the building. It was caused by the railroad. Yet, the court regarded the loss of the building by fire as being attributable to *the presence of* the building.

Finally, the *Bohannon* court erred in summarizing its position. It held:

* * * The effect of the principal clause, as held in *Southern R. Co. v. Coca Cola Bottling Co.,* supra, is simply to erase contributory negligence by the indemnitee railroad as a defense to an action by it against the indemnitor plaintiff. * * *

That is, of course, entirely erroneous. Negligence is in no manner a relevant part of the agreement where property loss to the licensee is concerned. In the quoted statement, the Georgia court quite clearly re-

veals its own confusion which resulted from an attempt to draw an analogy to the *Coca Cola* case. The latter dealt with personal injury, and the excepting clause [applicable there but not here] made the question of negligence on the part of the respective parties an issue.

The court discussed several cases cited by the railroad, brushing them aside as not being in point, and then said:

* * * The rationale of all these cases is that when the party seeking to indemnify itself or absolve itself from the consequences of its own negligence does so in unequivocal terms, the contract terms will be given effect, but no such result will be read into the contract by implication.

If the court had applied this statement of the law, to the agreement before it, it would have upheld the indemnity provision instead of rendering it nugatory. The indemnity provision there, as here, is spelled out in clear and unequivocal terms and did not require that anything be read into it. All that was needed was its application and enforcement by the court.

Actually, the *Coca Cola* decision supports Southern's position in the present case. There, the court quoted the entire indemnity provision (in essence the same as that here) and stated (145 F.2d at 306):

The District Judge held that had the indemnity clause ended with the word 'damage,' and had the last (and excepting) clause been omitted, Southern would have been entitled to recover against Coca Cola; but the District Judge held that the accident of Lackey fell within this last (excepting) clause of the contract, and the jury, under his direction brought in a verdict in favor of Cola Cola. While, as the District Judge observed, the question is close and not free from doubt, we think his decision was a correct interpretation of the excepting clause of the contract. * * *

The court further held at pages 307–308:

The cases cited in appellant's brief, and strongly relied on in oral argument, are hardly in point here. In none of these

cases did the indemnity contract contain an excepting clause similar to the one with which we are here concerned, and our decision of the instant case (as was true in the District Court) is squarely placed on the ground that the accident to Lackey fell within this excepting clause of the indemnity contract.

We should not give to the excepting clause an interpretation that would nullify the clear intent of the first clause of the paragraph, which is to impose liability for loss arising out of the location of the building notwithstanding negligence on the part of the company contributing to the loss. It will be noted, however, that the general clause covers all loss that may arise from the erection of the building. The excepting clause relates only to loss of life or personal injury or damage to cars or property *of the railroad.* The parties understood that this particular kind of loss, i. e. personal injury and damage to railroad property would be that which would ordinarily arise from operation of the railroad and as a result of conditions over which the Coca Cola Company would have no control. It was provided, therefore, that, as to such loss there should be no liability on the part of the company, if it was due to the negligence of the railroad and if the Coca Cola Company and its servants were without fault with respect thereto.

This gives the excepting clause a reasonable scope while giving effect to the general provisions of the first clause in cases of losses not of the special class covered by the excepting clause. It makes the Coca Cola Company liable generally for losses attributable to the maintenance of the warehouse on the right of way, but protects it from losses sustained from the operation of the railroad where the Coca Cola Company itself has been without fault.

Returning to the facts of the present case, we are dealing with a loss of property of the licensee, not the railroad, and the excepting clause is not applicable. Hence, the reasoning of the *Coca Cola* decision requires that the licensee be required to indemnify the railroad under the general language of the indemnity provision. In the *Coca Cola* case, the court held as a matter of law that the bottling company was *not negligent,* yet it would have been liable but for the excepting clause.

The same reasoning applies here. The licensee wanted a packing house on Southern's right-of-way and in close proximity to Southern's track. For reasons of safety, Southern would naturally prefer to handle cars without any building or other objects in close proximity to the track. (See the dissenting opinion of Judge Soper in the *Coca Cola* case, and also the language of the indemnity provision itself.) It was for the licensee's benefit that the packing house and the track were in close proximity. It was to allow for efficient loading and unloading of cars by the licensee that this was done. To allow this Southern required the licensee to covenant to protect and indemnify Southern "from the consequences of any property loss or damage * * * which may in any manner or to any extent be attributable * * * to the presence of [the packing house] * * * [upon said premises] * * *." The fact that Southern may have been negligent makes no difference. The fact that Watson may not have been negligent makes no difference. There would have been no collision but for "the presence of" the packing house.

The Supreme Court of South Carolina has not hesitated to give these indemnity clauses full application. In *Mayfield v. Southern Ry. Co.,* 85 S.C. 165, 67 S.E. 132 (1910), the railroad had built a spur track into an industrial site owned by the plaintiff pursuant to an agreement granting the railroad the necessary right-of-way and containing a clause indemnifying the railroad inter alia from loss or damage by fire communicated by locomotive engines or trains to buildings in connection with the businesses served by the industrial track, or to the contents. A fire burned the plaintiff's property. The trial judge, in charging the jury, gave the indemnity provision a narrow construction. He charged the jury that the indemnity clause would apply only if the fire origi-

nated on the spur track and would not apply if the fire originated on the railroad's main line. On appeal, a judgment in favor of the plaintiff was reversed, the Supreme Court holding:

The exemption clause is as follows: "That he (S. G. Mayfield) will indemnify and save harmless the railway company against all and any damage resulting from negligence of the party of the second part, his servants and employees, in and about said industrial track and the right of way therefor; and furthermore against any and all claims, demands, suits, judgments and sums of money accruing for loss or damage by fire communicated by locomotive engines or trains of the railway company to buildings used by the party of the second part in connection with the business served by said industrial track, or to the contents of such buildings, or to other property stored by or with the consent of the party of the second part, upon or near said industrial track. The railway company hereby stipulates for this protection as a condition of its agreement herein expressed, to afford the above described terminal services and facilities to the party of the second part elsewhere than at its regular station." The validity of such contracts has been so completely established by an unbroken current of judicial authority that the familiar and convincing reasoning on the subject need not be again set out. In asserting their validity, Mr. Justice Jones for the court tersely stated the argument and cited the authorities in *German-American Ins. Co. v. Southern Ry. Co.,* 77 S.C. 467, 58 S.E. 337. It makes no difference that the industrial plant to which the contract relates may be situated beyond the limits of the railroad right of way. The owner of the plant has no right and can acquire none except by contract to require the railroad company to build a spur track to his plant. *Mays v. Seaboard A. L. Ry. Co.,* 75 S.C. 455, 56 S.E. 30. It follows that as a condition of furnishing this convenience, the railroad company may exact any condition it sees fit not forbidden by public policy. As already pointed out, the condition that the railroad company shall be exempt from liability for loss of the plant by fire communicated by its locomotive engines is not forbidden by public policy; and therefore, this contract must be held valid without respect to the location of the plant. The precise point was decided in accordance with this conclusion by the Supreme Court of Texas in *M., K. & T. Ry. Co. v. Carter,* 95 Tex. 461, 68 S.W. 159.

While not denying the validity of the contract the Circuit Judge limited its effect by charging: "That under that (agreement) even should you find that Mr. Mayfield was the agent of Mrs. Mayfield, and she is bound by his acts, yet, that would not prevent Mrs. Mayfield from recovering here against the railroad company, if this fire originated from its main line, or anywhere else other than on the sidetrack." The exemption which the parties saw fit to express in their contract was "for loss or damage by fire communicated by locomotive engines or trains of the railway company to buildings, etc." It would have been difficult to use broader or more comprehensive language covering fires communicated by any locomotive or train, whether on the main track or on the spur track. The court cannot insert in the contract restrictive words which the parties saw fit to omit, and unless such words be inserted, there is no escape from holding the exemption to embrace fires communicated by the defendant's locomotives wherever they may be. The Circuit Judge was therefore in error in charging the jury that the contract of exemption had no application to fires communicated by the defendant's locomotives while on its main track. * * * (85 S.C. at 167–69, 67 S.E. at 133.)

The *Mayfield* case was followed by Judge Wyche in *Fraser-Patterson Lumber Co. v. Southern R. Co.,* 79 F.Supp. 424 (D.S.C. 1948). It has been followed consistently in South Carolina and was applied in *Pride v. Southern Bell Tel. & Tel. Co.,* 244 S.C. 615,

138 S.E.2d 155 (1964), which involved a contract exculpating the telephone company from a negligent mislisting in the yellow pages of its telephone directory.

In *Southern R. Co. v. Stearns Bros.,* 28 F.2d 560 (4th Cir. 1928) an indemnity clause was phrased to apply to property "stored" on the premises. The court refused to construe the word "stored" in a narrow, restrictive sense but applied it in the light of the circumstances and of the objectives desired by the contracting parties. As a result, the railroad was held not liable for damage to machinery in operation on the premises.

Annotations on the subject here are to be found in 14 A.L.R.3rd 446, and 20 A.L.R.2d 711. While there is usually some slight variance in the language of the agreements involved in the reported decisions, there is a clear weight of authority supporting the validity and applicability of the indemnity agreement involved here.

In addition to the *operative words* of the indemnity provision which have already been quoted hereinabove, the meaning of the agreement and the intention of the parties are evidenced by the recital of the indemnity provision which reads as follows:

8. That inasmuch as the use by the Licensee of property of the Railway Company in exercise of privileges herein granted may create risks of fire or other loss, injury or damage which would not accrue except for such use, and the Railway Company would not grant said privileges except upon the condition that it shall be protected against any risk so created. . . .

This concisely and clearly sets forth the reason for including the indemnity provision in the license agreement. The risk referred to would not arise from the building itself but from its close proximity to the railroad. It relates not only to fire but also to "other loss, injury or damage." If the packing house had not been located on the Company's right of way, it seems reasonable to conclude that this loss would not have occurred and the only reasonable inference

would be that this loss is one of the risks referred to.

This court had a similar case in *Shealy v. Southern Railway,* 287 F.Supp. 713 (D.S.C. 1968). That case is not controlling, as no motion for summary judgment was made. This court did come to the conclusion there, however, that if the court decided that the damage resulted from or was in any way attributed to the presence of the building within the meaning of the indemnity agreement, in keeping with the interpretation in *Coca Cola,* perhaps a judgment should be given for the defendant. The court was never called upon to make that decision.

■ Some two weeks after the motion had been lodged and expectation of a decision by this court was imminent, plaintiffs asked on November 11, 1975 to amend pursuant to Rule 15, Federal Rules of Civil Procedure. The notice and motion were almost an acknowledgment of the fact that up to that time the plaintiffs had no real basis for opposition to the motion for summary judgment. This court, at first was of the opinion that the proposed amendment came too late. Resort to appellate authority reveals the decision of *Sherman v. Hallbauer,* 455 F.2d 1236, 1242 (5th Cir. 1972) a case in which the plaintiff advanced another theory upon which to base liability after wasting much of the valuable time of the court. Advising liberality, the court said:

True, the Shermans advanced the contractual theory late in the day. But Rule 15 of the Federal Rules of Civil Procedure permits a party to amend his pleadings out of time by leave of court, and commands that "[such] leave shall be freely given when justice so requires." It is true too that the Shermans's lawyer consumed no small amount of the court's valuable time in insisting upon his misrepresentation theory of the case. Still, we conclude that in the interests of justice the district court should have construed the Shermans's frantically revised theory of the case, as plainly set forth in their memorandum in opposition to summary judgment, as a motion to amend the pleadings filed out of time. The com-

mand of Rule 15 is straightforward and permissive. On the facts of this case, fair treatment for the Shermans requires that they not be deprived of their day in court simply because, for a time, their attorney did much to insure that the day would never come. The district court should have allowed the amendment and must do so when the case is remanded for trial.

Under the command of this case, which this court respects, the amendment must be allowed in order that the plaintiff might not be denied, in this forum, "his day in court."

Nevertheless, the court is of the opinion that this late filing does not change the picture. The contract speaks for itself. The contract indemnifies the defendant against crosses which occur because the structure is on the right-of-way of the defendant. That is what the contract is all about. Otherwise, there would be no necessity for any contract.

One may well reason that if the defendant has to prove negligence on the part of the plaintiff in placing the structure on the right-of-way, there is really no need for the contract. The contract exists to protect the defendant against the very thing defendant realized might happen by virtue of the structure on the right-of-way. The proximity was a matter which was obviously the concern of the defendant in insisting upon the contract. To hold otherwise would do injustice to the integrity of a written contract, which the defendant says is binding upon it, and which the plaintiff said is not binding on him because he did not know of it, although binding on the person from whom he assumes all authority to invade the right-of-way of the defendant.

The motion for summary judgment is granted.

AND IT IS SO ORDERED.