## INSURANCE COMPANY *v.* SLAUGHTER.

1. A condition in a policy of assurance, by which the policy was made void in case the assured kept gunpowder, phosphorus, saltpetre, and benzine on the premises, held, under the punctuation of the policy, to mean "in quantities exceeding a barrel;" this being a more reasonable construction than one which made the policy void if there was *any* quantity, however small, of these articles, on the premises.
2. When insurance companies restrict, by conditions subsequently stated, the liability which the policy in its body appears to create, they should set forth these restrictions in terms which cannot admit of controversy, and should print these restrictive clauses in type large enough to arrest the attention of the assured. Nonpareil criticized as not being so.

ERROR to the Circuit Court for the Southern District of Mississippi; the case being thus:

The Phœnix Insurance Company of Hartford insured goods owned by one Slaughter, in a certain storehouse described in the policy. The policy was on one side of a sheet of paper sixteen inches long by ten wide; the upper seven being left blank for the name of the person insured, and a description in writing of the property insured. Four printed lines, in the type known as minion,[*] but leaded so as to be sufficiently legible, declared that "the company agreed to make good as to the assured his loss to the amount insured, to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same made by the assured and received at this office, *in accordance with the terms of this policy hereinafter mentioned.*"

Then followed, in a smaller type, not leaded, eight paragraphs, covering the rest of the sheet, and making a solid body of finely printed matter, most of the matter being provisions in favor of the company; some of them restricting the liability apparently incurred in the body of the instrument, and not a few making the policy entirely void. There was abundant room on the sheet, if less blank space had

---

[*] A smaller type than that in which the syllabuses of this book are printed.

been left, to have printed all these terms of the policy in a larger type.

The fourth subdivision of these terms ran thus, the size of the type and leading being here reproduced. The commas and semicolons were the same as here given, though here, for the benefit of the reader's eye, the pointing in some places is made more conspicuous than on the policy itself:

"If the assured shall have or shall hereafter make any other insurance of the property hereby insured, or any part thereof, without' the consent of the company written hereon; or if the above-mentioned premises shall be occupied so as to increase the risk, or become vacant and unoccupied for a period of more than thirty days, or the risk be increased by any means whatever within the control of the assured, without the consent of this company indorsed hereon; or if the property be sold or transferred, or any change take place in title or possession whatever, by legal process, judicial decree, voluntary transfer, or conveyance; or if this policy shall be assigned, either before or after a loss, without the consent of the company indorsed hereon; or if the assured is not the unconditional and sole owner of the property; or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, mortgagee, lessee, or otherwise, is not truly stated in this policy; *or if gunpowder, phosphorus, saltpetre, naphtha, benzine, benzoin, varnish, benzole, petroleum, or crude earth oils are kept on the premises, or if camphene, burning-fluid, refined coal or earth oils are kept for sale, stored, or used on the premises in quantities exceeding one barrel at any one time, without written permission in, or indorsed* upon, this policy; then, and in every such case, this policy shall be void."

The goods having been destroyed by fire, Slaughter sued the company, which set up as a plea that "the plaintiffs, contrary to the terms and provisions of the policy, without the written permission, or permission indorsed on it by the company, did keep gunpowder on the premises, and in the said storehouse described where the goods so insured were kept."

The plaintiffs demurred, and the demurrer being sustained, and judgment given against the company, it brought the case here.

Whether or not the plea was good, and the judgment rightly given, depended of course upon the proper construction of the part above italicized of the portion of the conditions of the policy in which it was found. It was contended by the insurance company that keeping gunpowder in the store *in any quantity* vacated the policy, while the assured insisted that the policy was not defeated if they did not keep more than *one barrel* at a time. Which was the right conclusion was the matter to be now decided.

*No counsel appeared for the insurance company, the plaintiff in error. Messrs. W. P. Harris and W. J. Withers, argued the case on briefs for the other side,* and characterizing the defence

as made merely for delay, asked damages under the 23d
Rule of court.*

Mr. Justice DAVIS delivered the opinion of the court.

If the clause of the policy out of which the difference of
opinion between the parties to this suit arises, were detached
from other parts of the instrument, there might be some
question as to its proper grammatical construction.  But
such is not the case.  It is the last clause in, the fourth sub-
division of the conditions embraced in the body of the policy,
and in this subdivision a number of causes are set forth which
shall operate to avoid the policy.  These causes are all em-
braced in separate clauses, each class being separated from
the others by a semicolon.  If there were in the clause in
dispute a semicolon where the word premises is first used, it
may be, in view of the punctuation adopted in reference to
the other clauses, that this clause would be complete in itself,
and exclude wholly from the premises gunpowder, saltpetre,
and the other articles in the same class.  But in the absence
of the semicolon, it is manifest that no greater restriction
can be applied to gunpowder and saltpetre than to camphene
and burning fluid, and that, therefore, the words " in quan-
tities exceeding one barrel at any one time," are applicable
alike to all the materials which are specified in the clause
in controversy.  This construction is fortified by the nature
of the forbidden articles.  Saltpetre is not a dangerous sub-
stance; and yet, according to the view of the counsel for
the plaintiff in error, it is prohibited altogether, while a
barrel of camphene and burning fluid, which are inflamma-
ble, can be stored with impunity.  A construction that would
lead to such a result cannot be adopted, unless the language
employed leaves no other alternative.

Besides, if the contract is as contended for, it would im-
peach the good faith and fair dealing of the insurance com-
pany, for it would be deceptive, and calculated to mislead
those who are not well informed on matters of this kind.

* See *supra*, 166.

It is well known that the agencies of this company are located in all parts of the country, and that, in many places where they are established, housekeepers generally keep on hand, for their own use, in small quantities, gunpowder, saltpetre, benzine, and perhaps other interdicted articles. It would never occur to this class of persons, on making application at one of these agencies for insurance, that they were forbidden to keep these things in their houses, and unless their attention was particularly called to the subject, which would be an unusual occurrence, they would take out their policies in the belief that they could keep and use the substances required for their necessities as they had been in the habit of doing; and, if they should happen to read over the schedule of conditions annexed to the policy, usually printed in the smallest type, not being accustomed to a critical examination of the structure of sentences, they would naturally conclude, as saltpetre and gunpowder are classed together, and as saltpetre is comparatively harmless, while camphene and burning-fluid are quite dangerous, that the restriction at the end of the enumerated articles was intended to be applied to all of them alike.

This, too, is the rational construction of the clause in question, and we cannot suppose the company which framed this policy intended it to be interpreted differently.

If insurance companies do not mean to take risks on property where gunpowder, saltpetre, and the like substances are kept, even for ordinary use, then good faith to the assured requires that they should declare their intention in terms which cannot admit of controversy; and, in order to avoid just cause of complaint, it would be better for them to employ type, in relation to this important subject, large enough to arrest the attention of an interested party.

In our opinion the Circuit Court did not err in sustaining the demurrer to the third plea, and the judgment of that court is, accordingly, affirmed.

The motion for damages is disallowed.