## Burkhard *versus* Travellers' Insurance Company of Hartford, Conn.

1. Where the general terms and scope of a policy of insurance are such as to cover a loss, conditions in the policy restricting liability so expressed as to be capable of two meanings should be held to have the meaning most favorable to the insured.

2. A policy of insurance against accidental death or injury contained a condition that the policy should not cover death or injury caused " by voluntary exposure to unnecessary danger." The insured, by a voluntary act, exposed himself to a hidden danger, the existence of which he had no reason to suspect, whereby he lost his life. *Held*, that his death was caused by an "accident;" that the case was not within the above condition, and that the company was therefore liable on the policy.

3. The said policy contained the further condition that the insurance should not cover injuries happening to the insured while " walking or being on the road-bed or bridge of any railway." The insured stepped

off a railway train when it came to a stop on a drawbridge at night, fell through a concealed hole in the bridge, and was killed: *Held*, that the case was not within the said condition, the obvious intent of which was to guard not against a defective road-bed or railway bridge, but against danger of injury from trains passing thereon.

January 31st 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Philadelphia county*: Of January Term 1883, No. 137.

Debt, by Leonard Burkhard, Sr., administrator of Leonard Burkhard, Jr., deceased, against the Travellers' Insurance Co., of Hartford, Connecticut, upon a policy or ticket of accident insurance, issued to the said Leonard Burkhard, Jr., in the sum of $3,000.

The policy contained, inter alia, the following clauses: " Provided always that this insurance shall not extend to any case . . . when the death or injury may have happened in consequence of . . . voluntary exposure to unnecessary danger, hazard or perilous adventure. . . . Walking or being on the road-bed or bridge of any railway are hazards not contemplated or covered by this contract, and no sum will be paid for disability or loss of life in consequence of such exposure or while thus exposed."

The case was tried by agreement, under the provisions of the Act of 1874, before HARE, P. J., whose findings of fact were as follows:

" The deceased, Leonard Burkhard, was on his way through Indiana to Louisville, Kentucky, via the Ohio and Mississippi Railway. The train was stopped on the railway bridge across the Ohio by the opening of the drawbridge, and Burkhard rose from his seat, went to the front platform, stepped off it to the railway track, fell through a hole caused by the removal of some of the planks with a view to repairs, and received a fatal injury which caused his death."

(Other facts which appeared from the evidence, which was brought up with the record, are referred to in the opinion of the Supreme Court.)

The plaintiff submitted, inter alia, the following points:

1. Should your honor believe from the evidence adduced, that plaintiff's decedent was half asleep or drowsy at the time of the accident, and that he was under the impression that he had arrived at the Louisville depot, his destination, and left the coach to see whether his surmises were correct, plaintiff is entitled to recover.

Answer. I hold that it is not necessary to enter on the consideration of this, because I find that there is no sufficient evidence that the plaintiff was half asleep or drowsy at the time

of the accident, or that he was under the impression that he had arrived at his destination and left the car to see whether his surmises were correct.

2. Should you, however, believe from the evidence adduced, that when plaintiff's decedent left the car he had full control of his senses, and merely left the same because the train had stopped, as it is customary for male passengers to do on long journeys, intending to return when notified by the railroad officials or engineer's whistle, and that he was not told to remain in the car and had no knowledge of the dangerous condition of the bridge ; it was not such a voluntary exposure to unnecessary danger as will excuse the defendants and relieve them from liability under the contract of insurance and the law applicable to this class of cases.

Answer. Declined.

His Honor's conclusions of law were as follows :

[The defendants would consequently be liable were it not that the policy contains two clauses—one, that the insured shall not voluntarily expose himself to danger; the other, that he shall not be on a railway track or bridge. Both these conditions were, in my opinion, broken by Leonard Burkhard. To leave a railway train in the obscurity of the night while it is standing on a railway track over a river is certainly an exposure to danger, which, if not uncommon among the travelling community, is clearly " voluntary " within the meaning of the policy; nor can there be a reasonable doubt that deceased violated the prohibition against being on the track or bridge, although his stay was momentary and he fell immediately through into the river.]

It was, indeed, contended that Burkhard had been asleep a short time previously, and might not have known what he was doing ; but if such an excuse could avail under any circumstances [it is not sustained by the evidence, because the deceased was roused by the conductor, went to the water-closet, came back and seated himself before the train arrived at the bridge, and was presumably in full possession of his faculties when he again rose a few minutes afterwards and proceeded to the platform as above stated.]

I find the above facts on the evidence as laid before me, and that the plaintiff is not entitled to recover.

Exceptions filed by the plaintiff to the above decision were overruled by the court, and judgment was entered in favor of the defendant, whereupon the plaintiff took this writ of error, assigning for error the dismissing of said exceptions, which were to the answers to the above points, to the portions of the decision above quoted within brackets, and to the strict construction of the condition in the policy against " voluntary

exposure to unnecessary danger," instead of construing the same liberally in favor of the assured.

*Henry D. Wireman*, for the plaintiff in error.—This was an "accident" policy; the condition against voluntary exposure to unnecessary danger, as construed by the court below, is such a limitation of the principal intent of both parties to the contract, that it is void as against the policy of the law. But it is not necessary to strike down the condition, if it is construed in the manner we contend for, which is, that the act of the deceased in stepping off the train was not a *voluntary* exposure to unnecessary danger, within the meaning of the condition. The stepping off the train was voluntary, but the deceased had no knowledge or notice of its being dangerous. He did not know that there was a hole in the bridge, and if the hole had not been there, there would have been no danger. His intended act was to step on the bridge, not into danger; the exposure to danger, being unintentional, was not voluntary: Schneider *v.* Provident Life Ins. Co., 24 Wis. 28 ; North American Ins. Co. *v.* Burroughs, 19 P. F. S. 43 ; Trew *v.* Railway Passenger Ins. Co., 6 Hurl. & Nor. 839 ; Penfold *v.* Universal Life Ins. Co., 85 N. Y. 317 ; Theobald *v.* Railway Passenger Assurance Co., 26 Eng. L. & Eq. Rep. 432.

*Wayne Mac Veagh*, for the defendant in error.—If jumping off a train when stopped at night on a bridge, without seeing where he would alight, is not " voluntary exposure to unnecessary danger," it is difficult to imagine what would be. It is vain to say that because the deceased did not certainly know he would fall into an abyss, that he did not voluntarily encounter the danger. That he did not certainly know that there was an absence of danger is sufficient—the violent presumption under such circumstances is that such an act is dangerous. All the authorities, except Schneider *v.* Provident Life Ins. Co., quoted by the other side, support this view : Morel *v.* Mississipi Valley Ins. Co., 4 Bush 535 ; Lovell *v.* Accident Ins. Co., 3 Ins. Law Jour. 877 ; Hoffman *v.* Travellers' Ins. Co., cited 7 Am. L. Review 594 ; May on Insurance, §§ 530, 531, 534 ; Sawtelle *v.* Railway Passenger Assurance Co., 15 Blatch. 216. Even if the deceased had stepped on the bridge, as it is alleged he intended to do, and been injured thereon, he would have been directly within the other prohibition of the policy against " walking or being on the road-bed or bridge of any railway."

Chief Justice MERCUR delivered the opinion of the court October 1st 1883.

[Burkhard *v*. Travellers' Ins. Co.]

This case arises on a contract of insurance against injuries and death through external, violent, and accidental means. The death of the intestate was so caused. The general terms of the policy are broad enough to make the company liable. It claims exemption therefrom under certain exceptions in the policy. What rule then must be applied in the interpretation of this contract and its exceptions?

The true principle of sound ethics, says Chancellor KENT, is to give the contract the sense in which the person making the promise believes the other party to have accepted it. A just sense should be exercised in so interpreting it as to give due and fair effect to its provisions: 2 Kent's Com. 557. When a party uses an expression of his liability having two meanings, one broader and the other more narrow, and each equally probable, he cannot, after an acceptance by the other contracting party, set up the narrow construction: 2 Whar. on Con. § 670. Hence, when an insurance company tenders a policy to a party seeking to be insured, and uses in the policy ambiguous words, these words will be held to have the meaning most favorable to the insured, as the presumption is that on this construction he took the policy, and as the company could have avoided the difficulty by being more specific: Id.; Fowkes *v*. Ins. Co., 3 B. & S. 917. The words in such case, said Mr. Justice BLACKBURN, ought to be construed in that sense, in which, looking fairly at them, a prudent man would have understood the words to mean: Id. It is now well recognized as a general rule that when a stipulation or an exception to a policy of insurance, emanating from the insurers, is capable of two meanings, the one is to be adopted which is most favorable to the insured: May on Ins. §§ 172–179; Wood on Ins. §§ 141–6; Allen *v*. Ins. Co., 85 N. Y. 473; Western Ins. Co. *v*. Cropper, 8 Casey 351; White *v*. Smith, 9 Id. 186. In case of doubt as to the meaning of terms emanating from an insurance company, they are to be construed most strongly against the insurer: May on Ins., supra; Fowkes *v*. Ins. Co., supra; Wilson *v*. Ins. Co., 4 R. I. 156; Bartlett *v*. Ins. Co., 46 Maine 500; Bowman *v*. Same, 27 Mo. 152; Ins. Co. *v*. Slaughter, 12 Wall. 404; N. A. Life & Acc. Ins. Co. *v*. Burroughs, 19 P. F. Smith 43.

The business of this company is to insure against accidents. The purpose of this policy is to pay specific damages for bodily injuries and death caused by external violent and accidental means. The death of the intestate was so caused. The company seeks to avoid liability under two clauses in the policy. One provides the insurance shall not extend to a case of death or injury caused by " voluntary exposure to unnecessary danger;" the other that " walking or being on the road-bed or bridge of any railway are hazards not contemplated or

covered by this contract, and no sum will be paid for disability
or loss of life, in consequence of such exposure, or while thus
exposed."

The insured was traveling by rail through Indiana on his
way to Kentucky. The train stopped on the bridge across the
Ohio River by reason of the draw part of the bridge being
open. He went to the front platform of the coach in which
he was riding, and stepped off, and through a hole in the floor
of the bridge, causing his death. This hole was about three
feet wide and four feet long. It was caused by the removal
of some planks during the making of repairs.

1. Was this act of the insured a voluntary exposure to un-
necessary danger ?

To make him guilty of a " voluntary exposure to danger "
he must intentionally have done some act which reasonable and
ordinary prudence would pronounce dangerous. The uncon-
tradicted evidence shows that several other passengers got out
of the coach, and some of them in advance of the insured.
They certainly apprehended no danger. It is customary for
male passengers to alight when a train stops for any length of
time. No notice was given to passengers that it was dangerous
to get out of the coach where it stood. So far as appears, the
bridge, with the exception of this hole, was well covered with
plank and entirely safe. When the intestate alighted other
passengers were standing on the bridge near the brakeman.
The latter was sitting on timber that was lying on the foot-walk
of the bridge, and was to be used in the repairs being made.
The passengers had no knowledge of these repairs. The brake-
man held his lantern so placed on the floor that another timber
cast its shadow over this hole making it impossible for the in-
sured to see it. He could see that portion of the floor lighted
by the lantern, and the passengers standing thereon. He could
see the brakeman near them. He stepped out of the coach in
plain sight of the brakeman. He had a right to suppose he
would land on a floor as firm as that on which the others stood.
Neither word nor sight gave him any notice of danger. He did
not approach the opening caused by the draw, and was not in-
jured thereby.

It is true he voluntarily left the car ; but a clear distinction
exists between a voluntary act and a voluntary exposure to
danger. Hidden danger may exist ; yet the exposure thereto
without any knowledge of the danger does not constitute a vol-
untary exposure to it. The approach to an unknown and unex-
pected danger does not make the act a voluntary exposure there-
to. The result of the act does not necessarily determine the
motive which prompted the action. The act may be voluntary ;

yet the exposure involuntary. The danger being unknown, the injury is accidental.

Accident is defined by Worcester to be an event proceeding from an unknown cause or happening without the design of the agent : an unforeseen event : incident : casualty : chance : and by Webster, an event that takes place without one's forethought or expectation : an event which proceeds from an unknown cause or is an unusual effect of a known cause, and therefore not expected : chance : casualty : contingency.

In view of the unquestioned facts, the death of the intestate was accidental. The danger was unknown. The injury was not designed. We think there was not such a voluntary exposure to danger as to fairly bring the act of the insured within the meaning of the exception.

2. Was he walking or being on the road-bed or bridge of the railway?

He certainly was not *walking* on the road-bed or bridge, and strictly speaking it is doubtful whether he was *being* on either. The evidence indicates that without touching either he probably passed directly from the steps of the car through the hole in the bridge. We will not, however, put the case on the narrow ground that he did not come in contact with either road-bed or bridge. The language of the exception clearly implies two thoughts. One, that the insured must not be on the road-bed or bridge for any length of time : the other, that the prohibition is not to guard against injury resulting from a defective road-bed or defective railway bridge : but against the danger of injury from trains passing thereon. If the design was to apply the language to bridges defectively constructed or out of repair, it would not have been restricted to *railway* bridges. It would have included all bridges, both foot and wagon. The purpose is not to avoid liability for injuries resulting from being on bridges unsafe in themselves. The manifest intent is to exempt from responsibility for damages caused by collision with trains moving thereon. The present is not like a case between a passenger and a railway company, in which the company may be exempt from liability for damages arising from negligence of the passenger, not voluntary. Nor did the act of the insured prove such a reckless exposure of his person, nor obvious risk of danger, as to bring him within the application of the rule declared in Morel *v.* Miss. Valley Ins. Co., 4 Bush 535 ; Lovell *v.* Accident Ins. Co., 3 Ins. Law Jour. 877 ; Sawtelle *v.* Railway Pass. Ass. Co., 15 Blatchford 216 ; and kindred cases.

We therefore think, under the facts found, and the rules of law which we have stated, the learned judge erred in holding

[Twelfth Street Market Co. *v.* Jackson.]

that the conduct of the insured brought him within either of the exceptions, so as to relieve the company from liability.

We discover no merit in the seventh specification of error; the others are substantially sustained.

Judgment reversed, and judgment in favor of the plaintiff for three thousand dollars, with interest thereon from the commencement of the suit and costs.