## BUSCH v. MIDLAND FINANCE CORPORATION et al.

### No. 9661.

Circuit Court of Appeals, Eighth Circuit.

April 14, 1933.

Rehearing Denied May 25, 1933.

860

David A. Murphy, of Kansas City, Mo. (John T. Harding and R. Carter Tucker, both of Kansas City, Mo., on the brief), for appellant.

M. J. Henderson and Thomas E. Deacy, both of Kansas City, Mo., for appellee Midland Finance Corporation.

Arthur N. Adams, of Kansas City, Mo. (Eaton Adams and Arthur N. Adams, Jr., both of Kansas City, Mo., on the brief), for appellee Kansas City Title & Trust Co.

Before KENYON and SANBORN, Circuit Judges, and REEVES, District Judge.

SANBORN, Circuit Judge.

From a decree dismissing his suit in equity brought against the appellees, the appellant has appealed. For convenience, the parties will be referred to as follows: the appellant as Busch, the appellees as the Midland and the trust company.

Without going into unnecessary detail, the facts are, in substance, these: Busch had some $200,000 of uncollected and perhaps uncollectible past due notes. An agent of the Midland solicited him to avail himself of the collection service of that company, stating that it had a new plan for making collections, which succeeded where all other methods failed; that the Midland refinanced debtors at a high rate of interest, and from interest collected from debtors and commissions collected from creditors it made a substantial profit; that under a contract which called for a payment of $1,000 by the creditor, the Midland would agree to pay him $6,000 at the end of a year, less what it had collected, provided the creditor listed with it for collection $75,000 in claims. Busch made written application for the contract, after having advised the agent what claims he intended to list for collection. The application was accepted. The contract was prepared by the Midland and delivered to Busch, who paid $1,000. The contract recited the payment of $1,000 "for one thousand Copyrighted Midland Service forms which client [Busch] agrees to use on debtors according to the instructions on the reverse hereof." It continued:

"No Claim shall be under $2.00 and they shall aggregate at least $75,000.00.

"Guarantee. The Corporation will pay to the Client In Cash On Or Before twelve months from date of this contract, Six Thousand Dollars ($6,000.00), less the amount recovered through the use of this service.

"Protection of Client. * * * The Corporation also maintains a minimum ten per cent cumulative reserve fund with the Kansas City Title & Trust Company as trustees for the purpose of paying any claims arising out of this and similar contracts. * * * All obligations of the Corporation are stated herein. Only statements printed herein are recognized."

Attached to the contract was the following certificate of the trust company:

"Trustee's Certificate.

"In accordance with the agreement between the Midland Finance Corporation, and the undersigned, this Contract, No. 2343, is registered in the owner's name on the registration books kept for that purpose at the office of the Kansas City Title and Trust Company in Kansas City, Missouri, and 10% of the above consideration has been placed in the cumulative reserve fund held by it as trustee, for the purpose of paying claims arising out of this and similar contracts.

"Kansas City Title & Trust Company,

"By A. Thurman Smith, Trust Officer."

The instructions on the reverse side of the contract directed Busch (1) to fill in the information blanks and "carefully answer all questions that you can on each claim, and send to the Corporation"; (2) to mail to debtors the two letters which would be prepared for him by the Midland on his own letterheads, and to send the Midland "Service Notices," properly filled out, on all claims not satisfactorily settled seven days after the mailing of letter No. 2; (3) to notify the Midland at once of any arrangements for settlement.

The following statements also appeared in the instructions:

"The Corporation will mail you an acknowledgment, which will be a duplicate copy of the Corporation's record of your claims, upon receipt of the Service Notices, which are to notify the Corporation to begin its part of the service, as per instructions thereon. This acknowledgment should be carefully checked and any errors, in debtors' names, addresses, and amounts due, which may appear thereon immediately be called to the attention of the corporation.

"The Corporation will begin its part of the service immediately upon receipt of the Service Notices. * * *

"Client is to have the additional use of the Tracing Department of the Midland Finance Corporation on amount not to exceed twenty per cent of this Contract without additional charge."

The information blanks and "Service Notices" were a part of the copyrighted blanks sent to Busch. He mailed to the Midland fourteen information blanks covering fourteen claims aggregating $75,969.59 face value and consisting of promissory notes. One of these claims was based on notes signed by Roberts & Greene. In the information blank Busch referred to the address of these debtors as "City Ball Ground, Georgia. Roberts' address unknown." There was also another claim based upon notes signed by Marion C. and Elmer G. Robinson, "1269 Baldwin Street, Waterbury, Conn." The Midland, after receipt of the information blanks, furnished Busch with two letters to be sent to each of the debtors except Roberts & Greene. He sent the letters as directed and wrote the Midland asking why there were no letters furnished for Roberts & Greene. He was advised that, since Roberts' address was unknown, that claim was referred to the "Tracer Department," and if, at a later date, the Midland located the debtor, "the copyrighted Midland Service may be applied." He was directed to list similar claims on forms inclosed. The letters mailed to the two Robinsons came back unopened, with the notation that they had removed, leaving no address. Busch notified the Midland on one of the "copyrighted" forms, the first paragraph of which read: "List of debtors whose address is unknown to be handled in Tracing Department only. Do not list for Midland Service."

No results having been secured from the sending out of the letters prepared by the Midland for Busch, he, as directed, sent in "Service Notices" to the Midland on all claims except the Roberts & Greene claim, for which no letters had been furnished him, and the Robinson claim referred to the Midland for tracing. The Midland succeeded in collecting nothing, and, after a year had expired, Busch demanded of the Midland that it pay him the $6,000 promised, which it refused to do. He then brought this suit against both the Midland and the trust company, asking that the court decree that the Midland owed him $6,000 and that the trust company be required to pay it out of the "cumulative reserve fund" in its hands.

It developed that, under an agreement between the Midland and the trust company, the latter was authorized to pay out only claims which were reduced to judgment or to the payment of which the Midland gave its consent in writing. Busch was not a party to this agreement and had no notice of it at the time this suit was brought.

The defendants sought to defeat the suit of Busch on two grounds: (1) That he had an adequate remedy at law and was therefore precluded from bringing a suit in equity; (2) that he had breached the contract.

The court held that the suit was properly brought in equity, but that the contract required Busch to list with the Midland at least $75,000 in claims against debtors whose addresses were correctly furnished to the Midland, and that, since the Roberts & Greene claim and the Robinson claim were deficient in that respect, they must be deducted from the total amount of claims sent in, which deduction would render the aggregate below $75,000.

It is only fair to say that those having to do with this contract have not been able to agree as to its meaning, which is certainly not adequately expressed. The agent who solicited it and Busch are fairly in accord as to the proposition that it was the aggregate of claims listed on the information blanks which controlled the right to collect the $6,000 promised at the end of twelve months. The Midland, in its answer, construed the contract as requiring Busch to use 1,000 blanks upon 1,000 debtors, and later, in its request for findings, it took the position that he was required to use a substantial number of the 1,000 blanks furnished and also was required to furnish a "Service Notice" as to each claim listed, that only claims as to which "Service Notices" were sent could be included in the aggregate, and that only claims for which correct addresses were given could be considered.

It must be remembered that the Midland solicited Busch to purchase this contract, prepared the contract itself, and accepted his $1,000. Under the circumstances, any doubts as to the meaning of the language used are to be resolved against the Midland. Texas & Pac. Ry. Co. v. Reiss, 183 U. S. 621, 626, 22 S. Ct. 253, 46 L. Ed. 358; Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 492, 52 S. Ct. 230, 76 L. Ed. 416; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co. (C. C. A. 8) 64 F.(2d) 224, 228; Drainage Dist. No. 1 of Lincoln County, Neb., v. Rude (C. C. A. 8) 21 F.(2d) 257, 261; Sternberg v. Drainage District No. 17 of Miss. County, Ark. (C. C. A. 8) 44 F.(2d) 560, 562; Marx v. American Malting Co. (C. C. A. 6) 169 F. 582,

584; Continental Oil. Co. v. Fisher Oil Co. (C. C. A. 10) 55 F.(2d) 14, 16; Bijur Motor Lighting Co. v. Eclipse Mach. Co. (D. C.) 237 F. 89, 92; 2 Williston, Contracts (1920) § 621; 13 C. J. 544, 545.

The Midland may have intended to provide that the $75,000 in claims should include only those against debtors whose correct addresses were furnished and as to which "Service Notices" were given, but we are unable to find any language which adequately expresses such an agreement between the parties. The interpretation which was put upon this agreement by the agent who sold it and by Busch, who bought it, does not seem to be opposed to its terms. The fact that the Midland never at any time suggested to Busch that he had failed in any particular to qualify under the terms of the contract which he had bought is significant. Assuming that the Midland intended to render an honest service, and that the failure of Busch to furnish correct addresses and "Service Notices" for two of the debtors was a breach, it would certainly have advised Busch that he was short in the total amount of his claims and that, unless he substituted other claims for those complained of, or secured the correct addresses of the debtors, it would not be under any obligation to him. The Midland's failure so to advise Busch and its acceptance of the "Service Notices" on the twelve claims is very persuasive that it regarded Busch's compliance with the instructions as sufficient.

We hold that what Busch did constituted a substantial compliance with the terms of the contract by him to be performed.

The only remaining question is whether Busch had a right to maintain this suit in equity. While it is apparent that the construction of this contract was for the court and that there was no substantial controversy as to any of the facts, nevertheless, if Busch had an adequate and complete remedy at law, he should have brought his action at law and the case should have been tried by a jury, even though there was no question of fact for a jury to determine. The court below was of the opinion that the trust company was a trustee, and that therefore this suit was properly brought in equity to compel the payment of Busch's claim out of the fund held by the trustee.

As we read this contract, the Midland agreed to pay Busch $6,000 at the end of twelve months, provided he listed $75,000 of lawful claims for collection and complied with the instructions on the reverse side of the contract, and it also agreed that this claim was secured by the deposit of the "cumulative reserve fund" in the hands of the trust company. Since this fund was created in part for the benefit of Busch, since the Midland had parted with any control over it, and since it constituted the security for the Midland's promise to pay, we see no adequate reason why Busch should be required first to bring an action at law against the Midland and then, upon the recovery of judgment, to proceed against the trust company. This suit is not unlike a proceeding to foreclose a mortgage or pledge, and is brought to compel the payment of a claim out of funds in the hands of a trustee. While the cause of action against the Midland, standing alone, was at law, that did not preclude Busch from proceeding in equity against the fund and incidentally securing a decree against the Midland for the amount which it promised to pay, thus disposing of the entire matter in one proceeding.

The right to bring such a suit in equity appears to have been settled in the case of Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183. Here, as in that case, it is doubtful whether an action against these defendants could be maintained at law, the contract not being originally between Busch and the two defendants, and the relief sought being different—a decree for the recovery of money from the Midland and a decree for the payment of what the Midland owed Busch, by the trust company, as trustee, out of the fund deposited as security by the Midland. As was said by the Supreme Court (Clews v. Jamieson, supra, 182 U. S. page 481, 21 S. Ct. 845, 853, 45 L. Ed. 1183): "The maintenance of this suit enables the whole question between all the parties to be determined therein, and prevents the necessity of any action at law or other proceeding in the courts for the purpose of determining the ultimate and final rights of all the parties to this suit. Such relief cannot be obtained in any one action at law." See, also, St. Petersburg Adv. Co. v. American Motorsign Co. (C. C. A. 5) 25 F.(2d) 397; Hunter v. Robbins (C. C.) 117 F. 920; Carter v. Blaine County Inv. Co. (D. C.) 45 F.(2d) 643, 648; Rumbarger v. Yokum (C. C.) 174 F. 55, 58.

The trust company seems fearful that it might be required to pay the claim of Busch out of its own funds. No such result is possible. Busch as against it seeks merely to establish his rights in the Midland reserve fund and he will be paid nothing by the trust company except from the fund. The trust company owes him no duty except as trustee.

 

The decree appealed from is reversed and the case remanded with directions to enter a decree in favor of Busch and to take such further proceedings as may be required and as are not inconsistent with this opinion.