## SOUTHERN RY. CO. v. COCA COLA BOTTLING CO.

### No. 5195.

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1944.

George H. Ward, of Asheville, N. C., and W. T. Joyner, of Raleigh, N. C. (G. L. Jones, of Asheville, N. C., on the brief), for appellant.

J. Y. Jordan, Jr., of Asheville, N. C. (Jordan & Horner, of Asheville, N. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE,. Circuit Judges.

DOBIE, Circuit Judge.

The Southern Railway Company (hereinafter called Southern), indemnitee, brought a civil action against the Coca Cola Bottling Company of Asheville (hereinafter called Coca Cola), indemnitor, to recover under the provisions of an indemnity contract. The District Judge directed the jury to find a verdict in favor of Coca Cola and Southern has duly appealed.

Coca Cola, to facilitate its business operations, wished to construct a storage warehouse on Southern's right-of-way at Murphy, North Carolina. Coca Cola naturally desired the location of the warehouse very close to the tracks of Southern so as to make loading of Coca Cola's products on freight-cars simple and easy. Southern, of course, would have preferred a location of the warehouse not too close to the tracks on account of the increased hazard of injuries to employees. After some negotiations between Coca Cola and Southern, engineers of Southern prepared blue-prints fixing the location of the warehouse, and employees of Southern drove stakes into the ground showing exactly where the warehouse was to be situated. And there the warehouse was built.

An elaborate contract, drawn by attorneys for Southern was signed by Coca Cola and Southern. This contract imposed various duties upon Coca Cola in connection with the warehouse and provided for a nominal rental of $15 per year to be paid by Coca Cola. Clause 8 of this contract contained the indemnity provision which forms the basis of the instant litigation.

·· This clause provides:

"8. That inasmuch as the use by the Licensee of property of the Railway Company in exercise of privilege herein granted may create risks of fire or other loss, injury or damage which would not accrue except for such use, and the Railway Company would not grant said privilege except upon the condition that it shall be protected against any risk so created, the Licensee, in consideration of said privilege and with warranty of its authority so to do, covenants hereby to protect and indemnify the Railway Company and save it wholly harmless from the consequences of any property loss or damage, death or personal injury whatever, accruing or suffered or sustained from or by reason of any act, negligence or default of the licensee, its agents, servants or employees, in or about or in connection with the exercise of the privilege hereby granted, or which may in any manner or to any extent be attributable thereto or to the presence of the warehouse of the Licensee, or contents thereof, on property of the Railway Company, and whether or not negligence on the part of the Railway Company, its servants, or employees, may have caused or contributed to the loss, injury or damage, *except that the Licensee shall not be held responsible for any loss of life or personal injury, or damage to cars or property of the Railway Company, accruing from its own negligence, without fault of the Licensee, its servants or employees."* (Italics ours.)

G. B. Lackey, a brakeman or flagman in the employ of Southern, while engaged in switching operations on freight cars in motion, was ordered by J. B. Robinson, conductor, to uncouple a car. While engaged in this task, his body struck the warehouse, he was knocked under the car and very badly injured. Lackey instituted a civil action against Southern in the Superior Court of Swain County, North Carolina, which resulted in a judgment in his favor in the amount of $8,500. Southern duly paid this judgment, plus costs of $51.70. The instant action was then instituted by Southern to recover from Coca Cola, under the indemnity provision (above quoted) of the contract, the amount of the judgment and costs paid by Southern in the Lackey suit.

The District Judge held that had the indemnity clause ended with the word "damage", and had the last (and excepting) clause been omitted, Southern would have been entitled to recover against Coca Cola; but the District Judge held that the accident of Lackey fell within this last (excepting) clause of the contract, and the jury, under his direction, brought in a verdict in favor of Coca Cola. While, as the District Judge observed, the question is close and not free from doubt, we think his decision was a correct interpretation of the excepting clause of the contract. We are led to this conclusion by a number of considerations, which we now set out and discuss.

It is Southern's contention that the excepting clause is inapplicable here, since the accident did not result from the negligence of Southern "without fault of the Licensee", because a proximate cause of the instant accident (as was found by the jury in the Lackey suit) was the nearness of the warehouse to the tracks. And, the location of the warehouse was the joint action of both Coca Cola and Southern.

 In the principal clause the Coca Cola Company undertakes to indemnify the Railroad Company for the consequences of any loss occasioned by the presence of the building even though the negligence of the railroad may have contributed to the loss. The excepting clause exempts the Coca Cola Company from liability where the loss is due to the negligence of the Railroad Company and the Coca Cola Company is without fault. This means that if a loss is due to the presence of the building and neither party is at fault, the Coca Cola Company is liable; if both are at fault, the Coca Cola Company is still liable; but, if the Railroad Company is negligent and the Coca Cola Company is without fault, the Coca Cola Company is not liable. As the Railroad Company here was admittedly guilty of negligence, the question in the case is whether the Coca Cola Company can be held guilty of fault within the meaning of the contract because of erecting the building at the exact place that the contract provided for it to be erected. This question must be answered in the negative. Fault within the meaning of a contract cannot be predicated upon doing precisely what the contract provides shall be done.

Certainly the excepting clause must have some meaning; it must have been the intention of the parties, by this clause, to exclude some class (or classes) of cases from the broad provisions of the preceding

part of the indemnity contract. Counsel for Southern tell us that this excepting clause relieved Coca Cola from liability when the location of the building was not a cause but was a mere condition of the injury. This strikes us as both unduly narrow and extremely technical. If this was the intention of the parties, surely this intention was expressed in inept and general words, when it might have been set out in terms too clear and explicit to be misunderstood.

■ This contract was drawn by Southern. It was signed, as so drawn, by Coca Cola without the change of a word. When the words of a contract are ambiguous, it is a well known and worthy maxim of our law that such ambiguities should be resolved against the party that drew the contract and selected its terminology and nomenclature. Omnia praesumuntur contra proferentem. Phoenix Ins. Co. v. Slaughter, 12 Wall. 404, 20 L.Ed. 444; Busch v. Midland Finance Corporation, 8 Cir., 64 F.2d 859; Wilkie v. New York Mut. Ins. Co., 146 N.C. 513, 514, 60 S.E. 427; 13 C.J., § 516, p. 544, 17 C.J.S., Contracts, § 324 p. 751.

■ Two other principles governing the interpretation of contracts, which favor the conclusion we have reached, might also be mentioned. Contracts indemnifying one against the consequences of his own negligence should be rather strictly construed. Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128, 133. And see the language used by Circuit Judge Parker in his dissenting opinion in Cacey v. Virginian R. Co., 4 Cir., 85 F.2d 976. When a particular occurrence falls within a general clause of a contract, and also within the precise terms of a specific provision of the same contract, a presumption arises that the specific (here the excepting clause) provision, rather than the general, is controlling. Deep Vein Coal Co. v. Chicago & E. I. R. Co., 7 Cir., 71 F.2d 963.

■ No formal estoppel, we think, against Southern can be predicated upon the fact that its engineers determined the exact location of the warehouse. Certainly we must infer that these engineers knew vastly more than bottlers of soft drinks about the hazards involved in the erection of the warehouse on the site chosen by these engineers. And we must presume that these engineers would not select a site

so dangerous in itself as to constitute negligence. Over a period of some ten years, until the unfortunate accident to Lackey, no one had been injured due to the location of the warehouse. And, during this period, not a suggestion was made by Southern either that real danger lurked in the location of the warehouse, or that any steps should be taken to lessen this danger, real or apparent. We deem these facts, however, as not lacking in importance; they lend added support to Coca Cola's contention as to the real scope and meaning of the excepting clause in the indemnity contract.

■ The cases cited in appellant's brief, and strongly relied on in oral argument, are hardly in point here. In none of these cases did the indemnity contract contain an excepting clause similar to the one with which we are here concerned. And our decision of the instant case (as was true in the District Court) is squarely placed on the ground that the accident to Lackey fell within this excepting clause of the indemnity contract.

We should not give to the excepting clause an interpretation that would nullify the clear intent of the first clause of the paragraph, which is to impose liability for loss arising out of the location of the building notwithstanding negligence on the part of the company contributing to the loss. It will be noted, however, that the general clause covers all loss that may arise from the erection of the building. The excepting clause relates only to loss of life or personal injury or damage to cars or property *of the Railroad*. The parties understood that this particular kind of loss, i. e. personal injury and damage to railroad property would be that which would ordinarily arise from operation of the railroad and as a result of conditions over which the Coca Cola Company would have no control. It was provided, therefore, that, as to such loss there should be no liability on the part of the company, if it was due to the negligence of the Railroad and if the Coca Cola Company and its servants were without fault with respect thereto.

This gives the excepting clause a reasonable scope while giving effect to the general provisions of the first clause in cases of losses not of the special class covered by the excepting clause. It makes the Coca Cola Company liable generally for losses attributable to the maintenance of

the warehouse. on the right of way, but protects it from losses sustained from the operation of the railroad where the Coca Cola Company itself has been without fault.

This brings us back to the fundamental question: was there fault on the part of the Coca Cola Company within the meaning of the excepting clause? We think there was not. The only fault of which it could possibly be guilty was in locating the building; and the location of the building was primarily the act of the Railroad rather than of the Coca Cola Company. The Coca Cola Company can no more be said to be negligent in erecting the building upon the location designated by the Railroad than it could if the Railroad had sold it the location, or than the builder who built the building could be held to be negligent. Furthermore, fault within the meaning of the contract should not be predicated on the location of the building at the precise place where the contract provided that it should be located.

We might point out, finally, that though the rental here was nominal, the erection of the warehouse was of benefit to Southern as well as to Coca Cola. Loading of the soft drinks on the cars at this warehouse by Coca Cola and increased freight revenues were of very real advantage to Southern.

The judgment of the District Court is affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

The Railway Company gave a written license to the Coca Cola Company to construct and maintain a bottling warehouse on a portion of the Railway's right of way in such a location that the clearance between the wall of the building and a passing freight car was only 18 inches. The parties conferred about the exact location of the building; the shipper stated its requirements and the Railway Company furnished the final blue prints. Both parties realized that real danger lurked in the proximity of the building to the track and consequently the Railway Company granted the license only upon the condition that the shipper would indemnify the Railway Company from the consequences of any property loss or personal injury attributable to the location of the building.

Of these facts there can be no doubt, for the parties expressly stated in an agreement prepared by the Railway Company that "inasmuch as the use by the licensee of property of the Railway Company in exercise of privilege herein granted may create risks of fire or other loss, injury or damage which would not accrue except for such use, and the Railway Company would not grant said privilege except upon the condition that it shall be protected against any risk so created, the licensee, in consideration of said privilege * * * covenants hereby to protect and indemnify the Railway Company and save it wholly harmless from the consequences of any property loss or damage, death or personal injury whatever, * * * which may in any manner or to any extent be attributable * * * to the presence of the warehouse of the licensee * * * on property of the Railway Company and whether or not negligence on the part of the Railway Company * * * may have caused or contributed to the loss, injury or damage."

But we are now asked to believe that the Railway Company, having safeguarded itself by this explicit indemnity agreement, deliberately destroyed its effect by adding an excepting clause which deprived it of the very protection which it had set out to secure. Why the Railway Company should have acted in this extraordinary fashion no one attempts to explain, and such behavior would be so devoid of ordinary business judgment that one is led to reexamine the excepting clause in the hope that a more reasonable interpretation may be found.

It provides that "the licensee shall not be held responsible for any loss of life or personal injury, or damage to cars or property of the Railway Company, accruing from its own negligence, without fault of the licensee". What did the parties mean by loss occurring from "negligence" of the Railway Company "without fault of the licensee"? Did they have in mind any negligence that might be involved in locating the building too near to the track? The answer must be no, because in the clause of the agreement immediately preceding the exception, the licensee agreed to safeguard the Railway Company from any loss in any manner attributable to the presence of the warehouse on the property of the Railway Company "whether or not negligence on the part of the Railway Company, its servants, or employees, may have caused or contributed to the loss, in-

jury or damage". In this respect this case is stronger for the indemnitee than that before this court in Cacey v. Virginian R. Co., 4 Cir., 85 F.2d 976, because in that case it was not expressly agreed that the Railway Company might recover notwithstanding negligence on its part in creating the situation.

How then shall the two parts of the indemnity agreement, the principal clause and the excepting clause, be interpreted in relation to one another? It is conceded "that we should not give to the excepting clause an interpretation that would nullify the clear intent of the first clause of the paragraph which is to impose liability for loss arising out of the location of the building notwithstanding negligence on the part of the company contributing to the loss"; and it is said that the general provisions of the first clause make the Coca Cola Company liable generally for losses attributable to the maintenance of the warehouse on the right of way, while the excepting clause protects that company from losses sustained through the operation of the railroad when the Coca Cola Company itself has been without fault. To illustrate, negligent operation might involve some disregard by the Railway Company of the safety of its employees or of the employees of the shipper, or some neglect in the use of a car which, by reason of its peculiar structure or appurtenances, could not safely pass through the limited space. If the Railway Company should be negligent in such a fashion without fault of the shipper, the latter would have no liability for an ensuing loss.

This interpretation of the contract is correct; but if it is correctly applied to the facts of the case, the liability of the Coca Cola Company is at once apparent. The injury to the brakeman which formed the basis of the judgment for $8,500 against the Railway Company in the state court was not caused by the negligent operation of the railroad but by the negligent location of the building. This conclusion is not open to dispute, for the only finding of negligence relied on in this case is the specific finding of the jury in the state court that the Railway Company was negligent in permitting the building to be constructed on its right of way in such close proximity to the track as to render it dangerous and unsafe to employees engaged in operating passing trains.

Why then should the Coca Cola Company be allowed to escape from its promise to save the Railway Company from losses so occasioned? The only answer is an appeal to the phrase "without fault of the licensee" which occurs in the excepting clause; and it is said that since the Coca Cola Company had no control of the operation of the railroad, it had no responsibility for the accident. This answer is obviously insufficient. The absence of fault on the part of the Coca Cola Company affords it an opportunity to escape liability for loss only when the loss is caused by the negligent operation of the railroad which did not occur in this case. When loss occurs through the negligent location of the building, it is of no importance that the Coca Cola Company was "without fault" in respect to the location, for these words are not found in the principal cause and have no relation to the location of the building or to losses occasioned thereby.

However, if the neglect contemplated in the exception relates to the location of the building, the licensee is not released from liability in this case, because it was a party to the transaction and was not without fault in the selection of the site of its warehouse. One does not excuse himself from negligence by proving that he acted at the behest or in accordance with the instructions of others; and in this instance the very purpose of the indemnity agreement was to safeguard the Railway Company from any loss that might flow from locating the building as shown on the plan. It did not require expert knowledge on the part of the Coca Cola Company to realize that some risk or danger of loss was involved in placing the building very near to the railroad track. Indeed the Coca Cola Company had positive and specific information from the very terms of the indemnity agreement that the location of the building might create a risk of fire or injury to property or person. Indemnity would not have been given if the parties had not realized that at some future time their conduct in locating the building might be adjudged to involve actionable negligence. The licensee, therefore, was a party to the neglect for which the Railway Company has been mulcted in damages and may not claim the benefit of the exception on the ground that it was without fault.

The judgment in favor of the Coca Cola Company should be reversed. There is nothing inherent in an indemnity agreement which requires a departure from the

usual rules of interpretation. Rather the proper approach is aptly expressed in Re New York, N. H. & H. R. Co., D.C., 46 F.Supp. 214, 232: "A court of equity in its zeal to protect an indemnitor from unreasonable demands will not, I apprehend, in so doing deprive the indemnitee of the substance of the protection for which it has contracted."